Lane M. Chitwood (Admitted Pro Hac Vice)
lane.chitwood@klarquist.com
Stephanie S. Irvine (Admitted Pro Hac Vice)
stephanie.irvine@klarquist.com
Jeffrey S. Love (State Bar No. 195068)
jeffrey.love@klarquist.com
Garth A. Winn (Admitted Pro Hac Vice)
garth.winn@klarquist.com
Klarquist Sparkman, LLP
121 S.W. Salmon Street, Suite 1600
Portland, OR 97204-2988
Telephone: (503) 595-5300
Facsimile: (503) 595-5301

Eric L. Wesenberg (State Bar No. 139696)
ewesenberg@orrick.com
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: (650) 614-7400
Facsimile: (650) 614-7401

Attorneys for Defendant International Game Technology
and Defendant/Counterclaim-Plaintiff IGT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY LIMITED and ARISTOCRAT TECHNOLOGIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> INTERNATIONAL GAME TECHNOLOGY, <br><br> Defendant, <br><br> and IGT, <br><br> Defendant and Counterclaim-Plaintiff. | Case No.: C-06-3717-MJJ <br><br> Electronic Case Filing <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE EXPERT TESTIMONY ADDUCED IN VIOLATION OF PATENT L.R. 4-3** <br><br> Date: May 30, 2007 <br> Time: 2:00 p.m. <br> Courtroom: 11 <br> Hon. Martin J. Jenkins |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on May 30, 2007, at 2:00 p.m., in Courtroom 11 of this Court, or as soon thereafter as the matter may be heard before the Honorable Judge Martin J. Jenkins, Defendants International Game Technology, Inc. and IGT (collectively, "IGT") will, and herein do, move the Court to strike expert testimony adduced in violation of Patent Local Rule 4-3.

Specifically, IGT requestfully requests that the Court strike the Declaration of Dwight Crevelt from the record, along with references to such testimony adduced in Aristocrat's *Markman* brief, which are identified in the chart below. IGT's Motion is based on this Notice of Motion and Motion, the Points and Authorities provided herein, Patent L.R. 4-2 and 4-3, Civil L.R. 1-4, the Joint Pre-Trial Scheduling Order in this case, the appendix filed herewith, and such other evidence and argument as may be adduced in further briefing and argument on this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Introduction

For patent cases in the Northern District of California, a party must disclose any expert testimony *before* filing its claim construction brief. Under Patent Local Rule 4-3(d), each party's portion of the Joint Claim Construction and Prehearing Statement (hereafter "Joint Claim Construction") must disclose:

> Whether any party proposes to call one or more witnesses, including experts, at the Claim Construction Hearing, the identity of each such witness, and *for each expert, a summary of each opinion to be offered in sufficient detail to permit a meaningful deposition of that expert.*

(emphasis added).

Pursuant to the pretrial scheduling order, Aristocrat was required to provide this information by February 6, 2007. *See* Dkt. 55, 1:22-24. It failed to do so. Instead, Aristocrat withheld the substance of its expert testimony for forty-five days after the deadline, until filing its *Markman* brief on March 23. As a result, Aristocrat's reliance on this testimony violates Rule 4-3.

IGT'S MOTION TO STRIKE EXPERT TESTIMONY - 1 - (Case No. C-06-3717-MJJ)

## II. Argument

Specifically, Aristocrat's February 6 submission failed to provide "a summary of each [Crevelt] opinion to be offered," and the conclusory statements it did make failed to provide "sufficient detail to permit a meaningful deposition." *See* Patent L.R. 4-3(d). For example, as to the disputed claim term "indicating the occurrence of the [second game] trigger condition…," Aristocrat stated on February 6, 2007:

> EXTRINSIC EVIDENCE: Dwight Crevelt, Aristocrat's expert, will testify what a person of ordinary skill in the art would understand these claim elements to mean.

Dkt. 121, Pls.' Exh. A (Part 3), 24. This disclosure fails to comply with Patent L.R. 4-3(d), because it suggests that Mr. Crevelt may *have* one or more opinions as to "what a person of ordinary skill in the art would understand these claim elements to mean," but it neglects to provide a summary of each opinion. This defect is highlighted by the fact that Aristocrat uses the same generic language to refer to Mr. Crevelt's opinion of a *different* claim term, "after completion of said first main game." *See* Dkt. 121, Pls.' Exh. A (Part 3), 32.

In contrast with this one-sentence disclosure, Aristocrat's *Markman* brief relies on numerous opinions to construe the "indicating" term, *see* Dkt. 157, 20:4-6, 20:10-13, 20:17-24 & 21:3-5, which fill four paragraphs and a full page in the Crevelt Declaration, *see* Dkt. 159, 5:10 – 6:8 (Crevelt Decl. ¶¶ 17-20). Because its Rule 4-3 submission did not even allude to – much less summarize – these additional opinions, Aristocrat violates Patent Local Rule 4-3 by relying on expert testimony to construe the "indicating" term.

Likewise, the rest of Aristocrat's February 6 Joint Claim Construction reveals a wholesale failure to disclose the expert opinions adduced in Aristocrat's *Markman* brief. The chart below provides a side-by-side comparison of the deficient statements in Aristocrat's February 6 submission, with the additional opinions in the Crevelt Declaration cited by Aristocrat's brief:

| Claim Terms | Summary of Opinions in Joint Claim Construction | Opinions from Crevelt Declaration Adduced in *Markman* Brief |
|---|---|---|
| "gaming machine" | Dwight Crevelt will testify that a person of ordinary skill in the art would recognize that the claimed gaming machine is not limited to a poker machine, that the term "game" is well-known and understood in the art, and that the outcome of a first game and second game can be determined simultaneously or sequentially.<br><br>Dkt. 121, Pls.' Exh. A (Part 1), 3-4. | *See* Dkt. 157, 7:1-3.<br><br>6.   To one of ordinary skill in the art, a "gaming machine" is not limited to a "poker machine." In fact, in Australia, it is common to refer to slot machines as "poker" machines or "pokies." I am in agreement with the citations in the patent specification which make clear that the "gaming machine" can be various types of games: "(i) A jackpot game is provided which is compatible with any existing game combination within an installation independent of the platform, denomination or type of game (e.g., slot machines, cards, keno, bingo or pachinko)." '215 Patent, at Col. 5, Lines 21-24; '603 Patent, at Col. 4, Lines 49-52. The specification also makes clear that "[a]nother advantage of using a random trigger for a feature game, is that it can be applied to any game." '215 Patent, at Col. 8, Lines 36-37; '603 Patent, at Col. 7, Lines 61-62.<br><br>Dkt. 159, 2:22 – 3:2 (Crevelt Decl. ¶ 6). |
| "progressive prize" | Dwight Crevelt, Aristocrat's expert, will testify that "progressive prize" is well-known in the art and should not be restricted as IGT proposes.<br><br>Dkt. 121, Pls.' Exh. A (Part 1), 9. | *See* Dkt. 157, 9:4-7.<br><br>7.   To one of ordinary skill in the art of gaming, including knowledge of prior art jackpot systems, would appreciate that incrementing the progressive prize could depend on time elapsed, from the number of games played, the number of coins in or out, or any other creative idea for increasing the prize money for playing the invention of the '215 and '603 patents, and that such prize money need not necessarily come from a "pool" as asserted by IGT. The source of money for the jackpot could come from any source including marketing money as well as contributions from actual game play. |

| Claim Terms | Summary of Opinions in Joint Claim Construction | Opinions from Crevelt Declaration Adduced in *Markman* Brief |
|---|---|---|
|  |  | Dkt. 159, 3:3-9 (Crevelt Decl. ¶ 7). |
| "game" | Dwight Crevelt, Aristocrat's expert, will testify that "game" was well-known in the art, it should be given its ordinary meaning, and should not be restricted as IGT proposes.<br><br>Dkt. 121, Pls.' Exh. A (Part 1), 25. | *See* Dkt. 157, 11 n.4, 11:5-8, 11:10-11.<br><br>8.   The "feature" game is a second screen game that may depict additional spinning reels and animations from which at least one of several prizes is won. A person of skill in the art would recognize that the outcome of both the first main game and feature game can be determined simultaneously or sequentially. This is simply a design choice and can be implemented in a number of ways.<br><br>9.   One of ordinary skill in the art would understand that the term "game" was well known in the art and should have its ordinary meaning "game." It is also clear from the context of the patent claims how the particular word "game" is used and whether it is referring to a second game or a first main or base game. Based on this understanding, as described in the '215 patent specification "game" can be the feature game (i.e., second game), base game (i.e., first main game). The term game itself can also refer to any type of game, such as a spinning reel or video slot machine, a jackpot game, card games of any type, keno, bingo or pachinko. '215 Patent, at Col. 5, Lines 21-24; '603 Patent, at Col. 4, Lines 49-52.<br><br>Dkt. 159, 3:10-22 (Crevelt Decl. ¶¶ 8-9). |
| "using a second game to select said one progressive prize" | Dwight Crevelt, Aristocrat's expert, will testify that "gaming machine," "game," and "progressive prize" is well-known in the art, it should be given its ordinary meaning, and should not be restricted as IGT | None. |

| Claim Terms | Summary of Opinions in Joint Claim Construction | Opinions from Crevelt Declaration Adduced in *Markman* Brief |
|---|---|---|
| | proposes.<br><br>Dkt. 121, Pls.' Exh. A (Part 1), 39. | |
| "causing a second game trigger condition to occur as a result of said first main game being initiated" | Dwight Crevelt, Aristocrat's expert, will testify what a person of ordinary skill in the art would understand these claim elements to mean..<br><br>Dkt. 121, Pls.' Exh. A (Part 2), 21. | *See* Dkt. 157, 12:21-22, 12:25-26.<br><br>10.     One of ordinary skill in the art would understand that a second game trigger condition can occur as a result of testing a trigger condition in software. This understanding is further supported by the '215 patent specification which states "[t]he function of triggering a feature jackpot game may be performed by a central feature game controller or may be performed within each console in the system." Col. 4, lines 4-6. The game controller described here, for example, could use software to test such a trigger condition.<br><br>Dkt. 159, 4:1-8 (Crevelt Decl. ¶10). |
| "said step of causing the second game trigger condition to occur including: (1) selecting … (2) allotting … (3) indicating…." | Dwight Crevelt will testify that one of ordinary skill in the art in programming does not necessarily have to program these steps in the enumerated order as found in the claim.<br><br>Dkt. 121, Pls.' Exh. A (Part 2), 22. | *See* Dkt. 157, 14:23 – 15:3.<br><br>11.     A person or ordinary skill in the art would understand that it is improper to limit the "selecting" and "allotting" steps to a particular order as described by IGT and could be implemented in a number of ways using standard programming techniques. There is no logical reason why the "selecting" step needs to come before the "allotting step." A programmer could easily program the selecting step to come after the allotting step or these steps could be programmed to occur simultaneously.<br><br>12.     In contrast, from a logical perspective, it is reasonable that the allotting step, which depends on the number of credits bet, could be determined before a random number is selected. |

| Claim Terms | Summary of Opinions in Joint Claim Construction | Opinions from Crevelt Declaration Adduced in *Markman* Brief |
|---|---|---|
| | | Dkt. 159, 4:1-8 (Crevelt Decl. ¶¶ 11-12). |
| "allotting a plurality of numbers from the predetermined range of numbers" | Dwight Crevelt, Aristocrat's expert, will testify what a person of ordinary skill in the art would understand these claim elements to mean.<br><br>Dwight Crevelt will testify that a person of ordinary skill in the art would recognize that the allotting element is not limited to a particular disclosed embodiment of the '215 and '603 patents.<br><br>Dkt. 121, Pls.' Exh. A (Part 3), 3. | *See* Dkt. 157, 16:24 – 17:2, 17:13-14, 18:11-14, 19:4-5.<br><br>13.    I have been asked to assume that a method claim is not limited to a particular structure. In view of that assumption, a computer programmer could implement the allotting step as multiple numbers in proportion to the bet size or as a single number that represents multiple numbers in proportion to the bet size (in the context of a less than comparison), the result is the same: a player is given a plurality of numbers. The player receives a greater chance to advance to the bonus round for a larger bet and, therefore, a greater incentive to bet more.<br><br>14.    IGT's construction of "allotting" as "selecting and assigning" is unnecessarily limiting because it appears to create a two step process and changes the plain and ordinary meaning of "allotting," which I understand to signify "giving to the player."<br><br>15.    A person of skill in the art would recognize that the range can be programmed explicitly or implicitly by setting a variable in software that specifies or is related to the upper bound of the range.  Nothing prevents numbers from being allotted before the range and the random number is selected.  To cite one non-exclusive example, if the upper bound were set to equal a large number such as 100,000, a typical random number generator would create a random number based on a range from 1 to 100,000. It is sufficient that whenever numbers are allotted to the player that the |

| Claim Terms | Summary of Opinions in Joint Claim Construction | Opinions from Crevelt Declaration Adduced in *Markman* Brief |
|---|---|---|
| | | allotted numbers fall within the range bound by the upper bound. It is immaterial from a programming standpoint whether the allotting of numbers occurs before or after the generation of the random number or the range itself which, in the above example, depended directly on the upper bound 100,000. It is simply a programming choice. Additionally, if the numbers 1-20 were allotted to the player, based on the player's bet, the allotted numbers would fall within the range; as it would be anticipated, the upper bound would be at least as large as the maximum bet possible, in any event.<br><br>16.   Aristocrat's invention which involves a fixed range of numbers from which numbers are allotted to the player based on the size of the bet, the Torango Free Play apparatus disclosed in the Torango patent had a variable, changing range of numbers which it used to vary the odds, it used a predefined number (the number "1") which could not represent more than one number, and did not utilize a less than or equal to comparison. The Torango Free Play apparatus was incapable of implementing the single number embodiment of the '215 and '603 patents-in-suit.<br><br>Dkt. 159, 4:9 – 5:9 (Crevelt Decl. ¶¶ 13-16). |
| "indicating the occurrence of the [second game] trigger condition...." | Dwight Crevelt, Aristocrat's expert, will testify what a person of ordinary skill in the art would understand these claim elements to mean.<br><br>Dkt. 121, Pls.' Exh. A (Part 3), 24. | *See* Dkt. 157, 20:4-6, 20:10-13, 20:17-24, 21:3-5.<br><br>17.   The specification acknowledges that "match" can encompass various mathematical or logical operations and their equivalents. The '215 patent, col. 6, lines 64-col. 7, line 4 states that "A bet of 20 credits will result in the numbers |

IGT'S MOTION TO STRIKE EXPERT TESTIMONY - 7 - (Case No. C-06-3717-MJJ)

| Claim Terms | Summary of Opinions in Joint Claim Construction | Opinions from Crevelt Declaration Adduced in *Markman* Brief |
|---|---|---|
| | | between 1 and 20 (inclusive) being allotted to the game... If the number 7 is produced by the random number generator, then the feature game will he triggered." Mathematically, when the random trigger value 7 is compared with the allotted range, the controller determines whether there is a match by comparing each number 1-2 (and finding if 7 equals any of the allotted numbers. If the player bets 5 coins and the software generates the single player value 5 (which represents the numbers 1,2,3,4, and 5) and assuming that the random trigger value is 4, the controller would find that a match has occurred because 4 is less than 5.<br><br>18.  A person of skill in the art at the time the patent was filed would understand "match" to encompass various mathematical or logical operations including but not limited to 5, >, <, 2, or = and their equivalents. The term "indicating the occurrence" can be implemented internally in software as a result of testing of the second game trigger condition and need not require alerting the player prior to the start of the second game, or the various temporal restrictions advanced by IGT.<br><br>19.  There is no requirement, as IGT suggests, that the allotted number be "identical" to the "selected random number" for the trigger condition to occur. As discussed above, "a jackpot feature [is] awarded if the trigger value is less than or equal to the player value."<br><br>20.  It is not required that the player be "alert[ed] . . . during the first main game that the second game will appear after the first game is complete" during the testing of the trigger condition or that |

| Claim Terms | Summary of Opinions in Joint Claim Construction | Opinions from Crevelt Declaration Adduced in *Markman* Brief |
|---|---|---|
| | | the "indication is different from and precedes the appearance and display of the second game." IGT's interpretation is not based on the claim language. In addition, the specification shows that "[t]he function of triggering a feature jackpot game [i.e., second game] may either be performed by a central feature game controller or may be performed within each console in the system." '215 patent, col. 4, lines 4-6. A controller (i.e., a microprocessor) is hardware that is programmed with software.<br><br>Dkt. 159, 5:10 – 6:8 (Crevelt Decl. ¶¶ 17-20). |
| "after completion of said first main game" | Dwight Crevelt, Aristocrat's expert, will testify what a person of ordinary skill in the art would understand these claim elements to mean.<br><br>Dkt. 121, Pls.' Exh. A (Part 3), 32. | *See* Dkt. 157, 21:26 – 22:3.<br><br>21.   The specification does not define "complete" as including paying out a prize. A person of ordinary skill in the art would understand that a second or feature game in a progressive system would not necessarily, and did not usually, occur after the payment of the winnings for the base or main game. A second or feature game would provide a chance to enhance the win (if one had occurred) in the main or base game, and the winnings would be paid after completion of the second or feature game.<br><br>Dkt. 159, 6:9-14 (Crevelt Decl. ¶ 21). |
| "randomly selecting said one progressive prize from said plurality of progressive prizes that has been won" | Dwight Crevelt, Aristocrat's expert, will testify what a person of ordinary skill in the art would understand these claim elements to mean.<br><br>Dkt. 121, Pls.' Exh. A (Part 3), 36-37. | None. |

Accordingly, as Aristocrat's *Markman* brief adduces this testimony in violation of Patent L.R. 4-3, the Court should exercise its inherent power, and its authority under Civil L.R. 1-4, to strike the Crevelt Declaration, and references to it, from the record.

## III. Conclusion

For all the foregoing reasons, IGT requests that the Court grant this motion to strike.

Dated this 6th day of April, 2007

By: s/ Lane M. Chitwood
Lane M. Chitwood (Admitted Pro Hac Vice)
lane.chitwood@klarquist.com
Stephanie S. Irvine (Admitted Pro Hac Vice)
stephanie.irvine@klarquist.com
Jeffrey S. Love (State Bar No. 195068)
jeffrey.love@klarquist.com

Garth A. Winn (Admitted Pro Hac Vice)
garth.winn@klarquist.com
Klarquist Sparkman, LLP
121 S.W. Salmon Street, Suite 1600
Portland, OR 97204-2988
Telephone: (503) 595-5300
Facsimile: (503) 595-5301

Eric L. Wesenberg (State Bar No. 139696)
ewesenberg@orrick.com
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: (650) 614-7400
Facsimile: (650) 614-7401

Attorneys for Defendant and Counterclaim-Plaintiff, IGT

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 6, 2007, the foregoing **DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE EXPERT TESTIMONY ADDUCED IN VIOLATION OF PATENT L.R. 4-3** was electronically filed with the Clerk of the Court using the CM/ECF System and that the same was served by electronic mail to the following:

Arturo E. Sandoval
asandoval@mwe.com
Terrence P. McMahon
tmcmahon@mwe.com
Anthony de Alcuaz
adealcuaz@mwe.com
Robert Blanch
rblanch@mwe.com
McDermott Will & Emery LLP
3150 Porter Drive
Palo Alto, California  94041

*Attorneys for Plaintiffs and Counterclaim-Defendants*
ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY LIMITED and
ARISTOCRAT TECHNOLOGIES, INC.

s/ Lane M. Chitwood