1  Lane M. Chitwood (Admitted *Pro Hac Vice*)
   lane.chitwood@klarquist.com
2  Stephanie S. Irvine (Admitted *Pro Hac Vice*)
   stephanie.irvine@klarquist.com
3  Jeffrey S. Love (State Bar No. 195068)
   jeffrey.love@klarquist.com
4  Garth A. Winn (Admitted *Pro Hac Vice*)
   garth.winn@klarquist.com
5  KLARQUIST SPARKMAN, LLP
   121 S.W. Salmon Street, Suite 1600
6  Portland, OR 97204-2988
   Telephone: (503) 595-5300
7  Facsimile: (503) 595-5301
8
   Eric L. Wesenberg (State Bar No. 139696)
9  ewesenberg@orrick.com
   Gabriel M. Ramsey (State Bar No. 209218)
10 gramsey@orrick.com
   ORRICK, HERRINGTON & SUTCLIFFE LLP
11 1000 Marsh Road
   Menlo Park, CA 94025-1015
12 Telephone: (650) 614-7400
   Facsimile: (650) 614-7401
13
14 *Attorneys for Defendants and Counterclaimants*
   INTERNATIONAL GAME TECHNOLOGY and IGT
15
   ## UNITED STATES DISTRICT COURT
16
   ## NORTHERN DISTRICT OF CALIFORNIA
17
   ## SAN FRANCISCO DIVISION
18

| | |
|---|---|
| 19 ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY LIMITED and ARISTOCRAT TECHNOLOGIES, INC., | Case No.: C 06-3717 MJJ (JLL) |
| 20      Plaintiffs and Counterclaim-Defendants, | ELECTRONIC CASE FILING |
| 21      v. | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARISTOCRAT'S DOCUMENT PRODUCTION UNDER RULE 37** |
| 22 INTERNATIONAL GAME TECHNOLOGY, | |
| 23      Defendant, | **DISCOVERY MATTER** |
| 24 and IGT, | **CONTAINS CONFIDENTIAL INFO** |
| 25      Defendant and Counterclaim-Plaintiff. | **Before: Hon. James Larson** |
| 26 | **Date: June 6, 2007** |
| | **Time: 9:30 a.m., Courtroom F** |

27
28 DEFENDANTS' NOTICE OF MOTION &
   MOTION TO COMPEL DOCUMENT
   PRODUCTION UNDER RULE 37

1

<u>**TABLE OF CONTENTS**</u>

2    MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................2

3    I.      INTRODUCTION....................................................................................................................2

4    II.     ARGUMENT ...........................................................................................................................3

5    A.    Aristocrat Is Withholding Critically Important Documents On
            Inventorship, Anticipation and Obviousness, Which Aristocrat
6           Produced to IGT in The Related *Torango* Litigation. .........................................3

7             1.    Aristocrat has not provided full production for IGT's RFP No. 20...........................8

8             2.    Aristocrat has not provided relevant "prior art" documents. ....................................10

     B.    Aristocrat is Withholding Discovery On Agreements
9           Covering the Patents and Technologies at Issue .........................................13

10            1.    Aristocrat Must Produce All Types of "Agreements" for IP Rights. .......................15

11            2.    Aristocrat Must Produce All "Customer" Agreements and
                    Negotiations for IP Rights. .......................................................................................16

12            3.    Aristocrat Must Produce "Foreign" Materials. ........................................................17

13            4.    Aristocrat Must Produce Materials Related to
                    The Terms of the Agreements and the Value of the
14                  Patent Rights Provided Therein. ..............................................................................18

15   C.    Aristocrat Has Not Provided Full Production of Its Own Systems. ..................................19

16            1.    Aristocrat Must Provide Information Related to its "Conception" and
                    "Reduction to Practice" ............................................................................................19

17            2.    Aristocrat Must Provide Documents Related to the
                    Functionality of the Asserted "Hyperlink" Technology..........................................21

18            3.    Aristocrat Must Provide Documents Related to Its Own Prior Art ..........................24

19   III.    CONCLUSION .....................................................................................................................25

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION &              i              Case No.:  C-06-3717-MJJ (JLL)
MOTION TO COMPEL DOCUMENT
PRODUCTION UNDER RULE 37

## TABLE OF AUTHORITIES

**Cases**

*Checkpoint Sys., Inc. v. All-Tag Sec. S.A.,*
   412 F.3d 1331 (Fed. Cir. 2005) ........................................................................7

*Cynthia Goff as the Administrator of the Estate of Lawrence*
   *Torango v. Harrah's Operating Co., Inc.,* CV-N-03-0690 (D. Nev) .................5, 7, 9, 12, 13, 14

*Fresenius Medical Care Holding Inc. v. Baxter Int'l, Inc.,*
   224 F.R.D. 644 (N.D. Cal 2004)........................................................10, 12, 14, 22

*Georgia Pacific Corp. v. U.S. Plywood Corp.,*
   318 F. Supp. 1116 (S.D.N.Y. 1970) ...............................................................17

*In re Gosteli,* 872 F.2d 1008 (Fed. Cir. 1989) ..................................................20

*Johns-Manville Corp. v. Guardian Indus. Corp.,*
   718 F. Supp. 1310 (E.D. Mich. 1989)............................................................16

*Joy Techs. Inc. v. Flakt, Inc.,*
   954 F. Supp. 796 (D. Del. 1996)....................................................................17

*J.T. Eaton & Co. v. Atlantic Paste & Glue Co.,*
   106 F.3d 1563 (Fed. Cir. 1997) .....................................................................22

*Nazomi Communications, Inc. v. Arm Holdings PLC,*
   No. C 02-02521-JF(RS), 2003 WL 24054504 (N.D. Cal. Sept. 3, 2003)........................22

*Riles v. Shell Exploration & Production,*
   298 F.3d 1302 (Fed. Cir. 2002) .....................................................................14

*Unisplay, S.A. v. Am. Elec. Sign Co.,*
   69 F.3d 512 (Fed. Cir. 1995) ...............................................................10, 12

**Statutes**

35 U.S.C. § 256....................................................................................................5

DEFENDANTS' NOTICE OF MOTION &          ii          Case No.:  C-06-3717-MJJ (JLL)
MOTION TO COMPEL DOCUMENT
PRODUCTION UNDER RULE 37

1    TO THE COURT AND ALL ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE that at 9:30 a.m. on June 6, 2007, at Courtroom F, 15th Floor, U.S.

3    Courthouse, 450 Golden Gate Avenue, San Francisco, California  94102, or as soon thereafter as is

4    practicable, Defendant International Game Technology and Defendant and Counterclaim-Plaintiff

5    IGT (collectively "IGT") will and hereby do move this Court for an Order compelling Plaintiffs

6    Aristocrat Technologies Australia Pty Limited and Aristocrat Technologies, Inc. (collectively

7    "Aristocrat") to provide full and complete document production in response to IGT's outstanding

8    Requests For Production ("RFP") Nos. 7, 11, 14, 15, 19-21, 27 and 29.

9        The requests are directed to invalidity, unenforceability, and damages.  Without justification,

10   Aristocrat has failed to produce all relevant, responsive material.  This production should be

11   compelled.

12       The motion is based on this Notice of Motion and Motion; the documents of record; the

13   Memorandum of Points and Authorities and the Declaration of Lane M. Chitwood ("Chitwood

14   Decl.") filed herewith, along with exhibits attached thereto; IGT's Requests for Production and

15   Aristocrat's responses thereto, copies of which are attached to the Chitwood Declaration and

16   incorporated herein; Federal Rules of Civil Procedure 26, 34 and 37; Local Rules 7, 37-1 and 37-2;

17   this Court's inherent powers; related case law; the briefing and argument provided herein; and such

18   other authorities as may be adduced in briefs or argument on this Motion.

19

20

21

22

23

24

25

26

27

28   DEFENDANTS' NOTICE OF MOTION &         1          Case No.:  C-06-3717-MJJ (JLL)
     MOTION TO COMPEL DOCUMENT
     PRODUCTION UNDER RULE 37

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This is a patent infringement suit between competitors Aristocrat and IGT.  The '215 and '603 patents-in-suit, which Aristocrat sometimes refers to as "Hyperlink" patents, claim jackpot methods for gaming machines.[1]  IGT served document requests for topics common to patent cases, including invalidity, unenforceability, noninfringement and damages.  Aristocrat has failed to provide complete production in response to at least request nos. 7, 11, 14, 15, 19-21, 27 and 29.  Accordingly, IGT moves the Court for an order compelling Aristocrat to provide this production.

IGT's second set of document requests was served on December 22, 2006.  [Chitwood Decl. Ex. 3, 17:2].  Aristocrat's initial responses refused to provide the majority of requested documents.  [*See, e.g.*, Chitwood Decl. Ex. 4, 16:26-17:25 (response to RFP No. 20)].  After conferring, Aristocrat agreed to provide supplemental production by February 9, 2007, and did provide some additional documents on February 10 (22,506 pages), February 23 (6 pages), and February 28 (4 pages).  [Chitwood Decl. Ex. 19].

Thereafter, the parties were at an impasse, and filed a Joint Statement on March 8, 2007 outlining their disputes.  The Court granted IGT leave to file the present motion.  [Dkt. 130 (Joint Statement Re Defendants' Proposed Expedited Motion to Compel Production of Documents and Things); Dkt. 144 (Order Denying Leave to File Expedited Motions, Permitting Filing Motions)].  In the Joint Statement, Aristocrat represented to the Court that it was "in the process of supplementing [its] responses to many of the document requests …, thus this motion should be moot."  [Dkt. 130 (Joint Statement), 4:1-4].  During the parties' telephone conference of March 14, Aristocrat agreed to supplement its discovery responses by March 16, but declared that it would not withdraw any of its previous objections to production.  [Chitwood Decl. ¶ 2].  On March 21, Aristocrat supplemented the language of several responses, with variations on the following statement:

---

[1]  The patents-in-suit are United States Patent Nos. 7,056,215 Bl (the "'215 Patent"), and 7,108,603 B2 (the "'603 Patent").

POINTS & AUTHORITIES IN SUPPORT OF     2
DEFENDANTS' MOTION TO COMPEL
DOCUMENT PRODUCTION

Case No.:  C-06-3717-MJJ (JLL)

"Subject to and without waiving its General and Specific Objections, and to the extent this request is understood and that such documents exist, Aristocrat responds that it has produced and will continue to produce non-privileged documents reasonably responsive to this request...."

[*See, e.g.*, Chitwood Decl. Ex. 13 (Aristocrat's First Supplemental Responses and Objections to IGT's Second Set of Requests for Production), 10:24 – 11:2 (supplemental response to RFP No. 10), 14:6-13 (supplemental response to RFP No. 19), 15:14-18 (supplemental response to RFP No. 20), 16:20-24 (supplemental response to RFP No. 21)].

Since Aristocrat neither withdrew its objections nor produced the relevant documents, IGT again asked Aristocrat to provide full production during the parties' March 28 telephone conference. [Chitwood Decl. ¶ 3]. Once again, Aristocrat responded by agreeing to produce some additional documents, which IGT received on March 30, 2007 (636 pages). [Chitwood Decl. Ex. 18]. In total, Aristocrat has produced 31,539 pages of materials.

Many problems remain with Aristocrat's production. However, the thorough meet-and-confer process leading up to the present motion has crystallized many of the issues before this Court. As discussed below, the parties have specifically identified certain materials that Aristocrat refuses to produce.

## II.   ARGUMENT

The civil rules allow discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party.... For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1).

### A.   Aristocrat Is Withholding Critically Important Documents On Inventorship, Anticipation and Obviousness, Which Aristocrat Produced to IGT in The Related *Torango* Litigation.

A key defense and counterclaim in this case is that the Patent claims are invalid for failing to satisfy the conditions of patentability set forth in 35 U.S.C. §102. [*See* Dkt. 79 (IGT's Answer, Defenses and Counterclaims to First Amended Complaint), ¶¶ 27, 229, 240]. Section 102(f) provides: "A person shall be entitled to a patent unless – ... (f) he did not himself invent the subject matter sought to be patented." Aristocrat is wrongfully withholding tens of thousands of pages that

POINTS & AUTHORITIES IN SUPPORT OF    3
DEFENDANTS' MOTION TO COMPEL
DOCUMENT PRODUCTION

Case No.: C-06-3717-MJJ (JLL)

1   it produced – to IGT – in a closely related case, that bear directly on allegations that Aristocrat did

2   not invent the subject matter of the patents at issue, but instead misappropriated it from a former IGT

3   game designer, Mr. Torango.  Discovery in that related case has been ongoing for years, and many

4   depositions of key Aristocrat individuals have been taken, including many depositions in Australia

5   that would be difficult and costly to replicate.  While IGT's counsel in the related case, in which IGT

6   is also a party, has copies of these confidential documents and deposition transcripts designated

7   "Confidential" by Aristocrat, Aristocrat flatly refuses to produce these same documents relating to

8   its misappropriation of the "invention" to IGT in this case, or to allow IGT's counsel in the related

9   case to share them with its counsel in this case.

10          More relevant documents in a patent case can scarcely be imagined.  Evidence that the

11   patentee misappropriated the invention from the defendant's designer is golden.  Aristocrat is hiding

12   this evidence from discovery in this case.  The delay alone is seriously prejudicial to Defendants,

13   given the fast-approaching February 2008 trial date.  Defendants are not getting this information

14   from Aristocrat via other means.  For example, at Aristocrat's recent (April 27) 30(b)(6) deposition

15   on the topic of the conception and reduction to practice of the alleged invention and any derivation

16   from others, its representative was a recent hire with no personal knowledge whatsoever on the topic

17   who was wholly unprepared to testify to Aristocrat's 1997 meetings with Torango and use of

18   Torango's "invention."  This is intolerable.  The remedy can be quick and painless.  This Court

19   should order Aristocrat to immediately produce to IGT in this case all documents it previously

20   produced to IGT in the Torango case, and all depositions transcripts it designated "Confidential" in

21   the Torango case (with Torango bates numbers intact so cross-references can be understood); indeed,

22   alternatively and preferably, the Court should order Aristocrat to authorize IGT's counsel in the

23   Torango case to share those documents with IGT's counsel in this case, as all the documents can be

24   produced on CD's or DVD's immediately.

25          Without question, the issues in the Torango case are directly related to IGT's defense in this

26   case.  Mr. Torango, a former IGT game developer (now deceased), alleges that he invented and

27

28   POINTS & AUTHORITIES IN SUPPORT OF      4           Case No.:  C-06-3717-MJJ (JLL)
     DEFENDANTS' MOTION TO COMPEL
     DOCUMENT PRODUCTION

shared with Aristocrat in 1997 the so-called "Hyperlink" technology that Aristocrat patented and

asserts in this case.  He alleges that Aristocrat, in patenting Torango's invention, violated a written

confidentiality agreement dated January 23, 1997.  *See Cynthia Goff as the Administrator of the*

*Estate of Lawrence Torango v. Harrah's Operating Co., Inc.*, CV-N-03-0690 (D. Nev), at, for

example, Torango's First Amended Complaint:

> Unbeknownst to Torango and without any ... approval, [Aristocrat] and/or their
> employees ... prosecuted patent applications ... knowingly based on THE
> INVENTION and ... developed ... gaming machines, gaming systems, and gaming
> technology knowingly based on THE INVENTION....  The technology embodied in
> those gaming machines and systems became known as *Hyperlink technology*.

[Chitwood Decl. Ex. 6 (Torango's First Amended Complaint), 7:23 – 8:3 (emphasis added)].  He

alleges that Aristocrat claimed Mr. Torango's "invention" as its own in Aristocrat's *own* provisional

and PCT patent applications (filed in July 1997, September 1997 and July 1998, respectively).

[Chitwood Decl. Ex. 6 (Torango's First Amended Complaint), 5:22-8:25].  That PCT application

eventually issued as the '215 patent in this case, the '603 patent in this case purports to be a

continuation of the '215 patent, and both patents claim priority to those 1997 provisionals.

[Chitwood Decl. Ex. 14 ('215 Patent)].  All evidence of Aristocrat's derivation of those "inventions"

by misappropriating Torango's invention is critically relevant to this case.

　　　　The relevance of Torango case documents extends beyond the inventorship issue, to prior art

and commercial success issues as well.  Torango contends that Aristocrat used his invention in its

"Hyperlink" games, which Aristocrat is relying on in this case to try to prove commercial success.

[Chitwood Decl. Ex. 6 (Torango's First Amended Complaint), 7:23 – 8:3].  Torango further alleges

that Aristocrat's Hyperlink games infringe Torango's *own* Patent (U.S. Patent No. 6,592,460), which

IGT alleges in the Torango case that it owns, because Torango was working for IGT at the time.

[Chitwood Decl. Ex. 6 (Torango's First Amended Complaint), 9:20-10:20].  Aristocrat has put forth

many "prior art" references in arguing that the Torango Patent is invalid.  [Chitwood Decl. Ex. 20

(Aristocrat's Third Amended Answer to Torango's First Amended Complaint), 26:15-20].  Those

prior art references are also prior art to the Aristocrat '215 and '603 patents, as Aristocrat

acknowledged by submitting some of them – and some of its interrogatory responses relating to prior art from the *Torango* case – to the PTO in the prosecution of the '215 patent. Aristocrat alleges that the patents at issue in this case cover the "Hyperlink" games and triggers, which are also at issue in *Torango*. In this case, IGT's defenses and counterclaims include detailed allegations on Aristocrat's withholding from the PTO key prior art from the *Torango* case. Accordingly, all documents relating to the prior art that Aristocrat produced or identified in the *Torango* case is directly relevant to this case, and must be produced here.

These two core issues in the *Torango* litigation are thoroughly intertwined with issues in this litigation, including:

- **<u>Invalidity – Aristocrat's Allegations (Prior Art)</u>**: In the *Torango* litigation, Aristocrat alleges that the Torango Patent is invalid, as anticipated by or obvious in view of prior art. [Chitwood Decl. Ex. 20 (Aristocrat's Third Amended Answer to Torango's First Amended Complaint), 26:15-20]. The same technology is at issue in both cases, as Aristocrat alleges that the patents at issue in this case cover the "Hyperlink" games and triggers, which are also at issue in *Torango*. As a result, the many "prior art" references Aristocrat has put forth to argue that the Torango Patent is invalid are also prior art to the Aristocrat '215 and '603 patents, which Aristocrat acknowledged by submitting some of them – and some of its interrogatory responses relating to prior art from the *Torango* case – to the PTO in the prosecution of the '215 patent. In sum, the art which purportedly invalidates the Torango Patent is also relevant to the validity of Aristocrat's patents asserted in this case.

- **<u>Invalidity – Mr. Torango's Allegations (Inventorship)</u>**: In the *Torango* action, Mr. Torango alleges that he was the true inventor of the technology embodied or discussed in Aristocrat's Australian patent applications, to which Aristocrat claims priority for the patents in this suit. [Chitwood Decl. Ex. 6 (Torango's First Amended Complaint), 2:8-12]. If these allegations are true, the patents in this suit are invalid (and unenforceable). If Aristocrat took the "invention" from Mr. Torango, the asserted patents are invalid under 35 U.S.C. § 102(f). If Aristocrat simply came up with the "invention" after Mr. Torango, the patents are invalid under 35 U.S.C. § 102(g)(2). If

1   Aristocrat intentionally failed to list Mr. Torango as an inventor, the patents are invalid under § 256,

2   and unenforceable for inequitable conduct. 35 U.S.C. § 256; *Checkpoint Sys., Inc. v. All-Tag Sec.*

3   *S.A.*, 412 F.3d 1331, 1338-40 (Fed. Cir. 2005).

4   • **Non-infringement**. One of Aristocrat's "defenses" in *Torango* is that IGT owns Mr.

5   Torango's "invention," because he conceived of it while working for IGT. [Chitwood Decl. Ex. 20

6   (Aristocrat's Third Amended Answer to Torango's First Amended Complaint), 25:7-25]. Evidence

7   in support of such allegations would show that IGT's is simply practicing what it invented first,

8   rather than anything Aristocrat invented later. Such evidence would render Aristocrat's asserted

9   patents invalid under 35 U.S.C. Sections 102(f) and 102(g)(2).

10   • **Inequitable conduct**. IGT alleges that during prosecution of the asserted '215 patent,

11   Aristocrat submitted to the Patent Office *some* of its interrogatory responses regarding its prior art

12   contentions from *Torango*, but it omitted some of the most material prior art – including documents

13   describing some of its own prior art slot machine games. [*See* Dkt. 79 (IGT's Answer, Defenses and

14   Counterclaims to First Amended Complaint), ¶¶ 165-216]. IGT alleges this "cherry-picking"

15   supports an inequitable conduct defense in this case, since Aristocrat breached its duties to the Patent

16   Office by selectively withholding this material art.

17   • **Claim Construction**. The Patent Office repeatedly cited the Torango Patent, along with

18   other prior art, as grounds for rejecting Aristocrat's claims in its '215 application. [*See* Dkt. 79

19   (IGT's Answer, Defenses and Counterclaims to First Amended Complaint), ¶¶ 83-137]. Aristocrat

20   overcame those rejections by narrowly interpreting the Torango Patent, but the claim construction in

21   *Torango* recently undercut Aristocrat's interpretation. *Id.*

22   • **Collateral estoppel**. If Torango proves that Aristocrat misappropriated the "invention"

23   claimed in the patents at issue here, collateral estoppel should end this case, because Aristocrat will

24   not own the patents and, moreover, the patents will be invalid for failing to name Mr. Torango as an

25   inventor. *See* 35 U.S.C. §§ 102(f), 256.

26

27

28   POINTS & AUTHORITIES IN SUPPORT OF     7          Case No.: C-06-3717-MJJ (JLL)
     DEFENDANTS' MOTION TO COMPEL
     DOCUMENT PRODUCTION

1. **Aristocrat has not provided full production for IGT's RFP No. 20.**

IGT's RFP No. 20 seeks information directly relevant to inventorship, non-infringement, claim construction and inequitable conduct issues in this case.

**REQUEST NO. 20**

All documents in the Torango Litigation relating to (a) Prior Art identified by anyone, (b) any contention that others, including without limitation IGT employees, invented or contributed to the subject matter of the patent(s) at issue in the Torango Litigation, or (c) any contention that a specific apparatus or method is or is not distinguishable from apparatus or method claimed in the patent(s) at issue in the Torango Litigation, including without limitation the Torango slot machine trigger. This includes without limitation the prior art references themselves in full, documents showing their first publication or use, and all discussion of them in interrogatory requests and responses, document requests and responses, requests for admissions and responses, deposition and trial transcripts and video (produce the entire transcript and video for any such deposition). This also includes, without limitation, all attorney work product and client communications relating to why the Prior Art in the Torango Litigation was only selectively disclosed to the PTO (if this is withheld due to privilege, as noted above, please provide a privilege chart).

[Chitwood Decl. Ex. 3, 11:12-24].

Aristocrat should produce the documents it produced in the *Torango* case and copies of all deposition transcripts of Aristocrat representative, employees or ex-employees from that case. Those documents and transcripts discuss the "trigger" or alleged invention set forth in Aristocrat's provisional applications (to which the asserted patents claim priority).

Initially, Aristocrat refused to produce the requested materials from *Torango* on relevance grounds, because "[d]ocuments from the Torango case involve a different patent." [Chitwood Decl. Ex. 4 (Aristocrat's Responses and Objections to IGT's Second Set of Requests for Production), 17:12-13]. More recently, Aristocrat has supplemented its response, and purportedly "agreed" to "produce non-privileged documents reasonably responsive to this request . . . relevant to the issues or Asserted Patents in this case." [Chitwood Decl. Ex. 13, 15:14-18 (supplemental response to RFP No. 20)].

Despite this agreement, Aristocrat has not yet produced all responsive documents.  In fact, the sum total of all documents produced that mention "Torango," excluding the production of the publicly-available patents and file histories, is as follows:

| Brief Description | Bates Rage | Pages |
|---|---|---|
| REDACTED | ARIS0016_0012976 – 3004 | 29 |
|  | ARIS0016_0011379 – 384 | 6 |
|  | ARIS0016_0009351 – 391 | 41 |
|  | ARIS0016_0011454 – 460 | 7 |
| Total Pages (Excepting Publicly Available Patents/File Histories) |  | 83 |

By contrast, Torango has recently responded to IGT's third party subpoena by producing 12,900 pages, including over 200 pages of REDACTED (Torango0000011 – 256).  [Chitwood Decl. ¶ 7].  As a result, IGT knows that Aristocrat's production is incomplete.  Aristocrat is the proper source to provide these documents, which it has already produced in another case.

An important inquiry in the *Torango* case is the determination of who developed (or "invented") the Hyperlink technology.  For validity, enforceability, and even for the base issue of standing, that inquiry is equally important in this case.  As such, all related documents should be produced.  Depositions are an important source of information about this key issue.  As noted above, Aristocrat refuses to produce *any* deposition transcripts from the *Torango* case.  [Chitwood Decl. ¶ 6].  Certainly, several of these depositions contain testimony relevant to a key question in both cases: Who developed (or "invented") the Hyperlink technology – IGT, Mr. Torango or Aristocrat?

IGT also requested that Aristocrat's privilege logs from the *Torango* case be produced in this case, so that IGT can understand which documents are being withheld on these relevant issues.  [Chitwood Decl. ¶ 9].  Aristocrat has refused to provide these privilege logs.  *Id.*

POINTS & AUTHORITIES IN SUPPORT OF     9          Case No.:  C-06-3717-MJJ (JLL)
DEFENDANTS' MOTION TO COMPEL
DOCUMENT PRODUCTION

1    There is no justification for Aristocrat's refusal to provide complete production.  As

2  explained above, the requested documents are clearly relevant to this case.  Moreover, this

3  production imposes no burden on Aristocrat.  Since Aristocrat has *already* produced the requested

4  materials and privilege logs to IGT's attorneys in the *Torango* case, and Aristocrat is represented by

5  the same counsel in both cases, it can simply place these same files on a CD and send them to IGT's

6  attorneys in this case.  In fact, Aristocrat needn't even do this much, because IGT's own counsel

7  from the *Torango* case could send the CD to its counsel in this case, upon Aristocrat's approval or

8  this Court's order.

9    As the parties have negotiated these points for an undue amount of time, the Court should

10  compel Aristocrat to immediately produce all of its materials from the *Torango* case, including

11  Aristocrat's pleadings, discovery, privilege log(s) and depositions (including both DVDs and

12  transcripts).  *Cf. Fresenius Medical Care Holding Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 656

13  (N.D. Cal. 2004) (granting motion to compel for request seeking "all documents that relate to any

14  prior litigation pending or threatened regarding any patents in suit.").

15    **2.   Aristocrat has not provided relevant "prior art" documents.**

16  IGT has two requests for the production of documents related to "prior art."

17  **REQUEST NO. 7**

18  All documents and things that evidence, refer to or relate to anything identified in the
    Torango Litigation as being Prior Art to the Torango Patent.
19
20  [Chitwood Decl. Ex. 1, 7:1-4].

21  **REQUEST NO. 20**

22  All documents in the *Torango* Litigation relating to (a) Prior Art identified by
    anyone.... This includes without limitation the prior art references themselves in full,
23  documents showing their first publication or use, and all discussion of them in
    interrogatory requests and responses, document requests and responses, requests for
24  admission and responses, deposition and trial transcripts and video (produce the entire
    transcript and video for any such deposition). ...
25
26  [Chitwood Decl. Ex. 3, 11:12-24].

27
    POINTS & AUTHORITIES IN SUPPORT OF     10          Case No.:  C-06-3717-MJJ (JLL)
28  DEFENDANTS' MOTION TO COMPEL
    DOCUMENT PRODUCTION

1       As set forth above, the same technology is reflected in both the Torango Patent and the

2   asserted patents in this case. Accordingly, the prior art that Aristocrat cited against the Torango

3   Patent – and documents identifying what prior art to the Torango Patent Aristocrat was aware of,

4   who was aware of it, and when they were aware of it – are relevant to IGT's invalidity and

5   inequitable conduct defenses in this case.

6       IGT requests that such art and related documents be produced. [Chitwood Decl. Ex 1, 7:1-3

7   (RFP No. 7); Ex 3, 11:12-24 (RFP No. 20)]. Aristocrat's responses agree to produce non-privileged

8   documents reasonably responsive to these requests. [Chitwood Decl. Ex. 2, 9:1-15 (response to RFP

9   No. 7); Ex. 4, 17:7-25 (response to RFP No. 20); Ex. 13, 15:14-18 (supplemental response to RFP

10   No. 20); Ex. 15, 5:19-24 (supplemental response to RFP No. 7)]. To date, however, Aristocrat has

11   not done so.

12       First, Aristocrat must produce *all* relevant prior art. Aristocrat has produced *some* prior art

13   documents, including Bates Nos. ARIS0016_0028912 – 30893. [Chitwood Decl. ¶ 4]. However, it

14   appears that Aristocrat has failed to produce all such documents. *Id.* Aristocrat is required to

15   produce all such prior art in light of their own contentions regarding the close relationship between

16   the technology in the two suits.

17       Second, Aristocrat has not provided documents that "refer or relate to" such prior art. IGT

18   would expect *at least* the following document types to exist:

19      • **Contentions Regarding Validity**: IGT has obtained from public sources certain

20   pleadings and discovery from the *Torango* case. In those pleadings, Aristocrat alleges that the

21   Torango Patent is invalid and unenforceable. [Chitwood Decl. Ex. 20 (Aristocrat's Third Amended

22   Answer to Torango's First Amended Complaint), 26:15-20, 31:6-12, 32:15 – 33:5]. While IGT has

23   obtained some of the discovery regarding the specifics of those allegations from public sources,

24   Aristocrat has failed to produce any of it. [Chitwood Decl. ¶ 5]. Since some of this material is not

25   available from public sources, Aristocrat needs to produce it. It is appropriate for Aristocrat to

26   provide all its contentions and discovery responses regarding prior art for the *Torango* case.

27

28   POINTS & AUTHORITIES IN SUPPORT OF    11      Case No.: C-06-3717-MJJ (JLL)
DEFENDANTS' MOTION TO COMPEL
DOCUMENT PRODUCTION

1    This production would not be burdensome for Aristocrat because, naturally, the material has

2    already been collected and produced in the *Torango* case. Also, the same counsel represents

3    Aristocrat in both the *Torango* case and this one.

4        • **Depositions Regarding Validity**: Presumably, at least a few of the depositions taken in

5    the *Torango* litigation referred to the prior art in that case, and would be responsive to IGT's request

6    for production. However, during the parties' meet-and-confers, Aristocrat has refused to produce

7    *any* deposition transcripts from the *Torango* case. [Chitwood Decl. ¶ 6].

8        Aristocrat's stated rationale for withholding production is that it would be too burdensome to

9    redact non-responsive portions of each transcript. *Id.* However, Aristocrat's reliance on this self-

10   imposed "burden" is erroneous. IGT suggested, during the parties' meet-and-confer, that Aristocrat

11   avoid any such burden by producing responsive transcripts in their entirety. *Id.* In fact, IGT's RFP

12   No. 20 specifically requests that Aristocrat "produce the entire transcript and video for any such

13   deposition." [Chitwood Decl. Ex. 3 (IGT's Second Set of Requests for Production), 11:12-24].

14   Aristocrat stated that it will not do so, because it refuses to provide any non-responsive information

15   from the *Torango* case to IGT's counsel in this case. [Chitwood Decl. ¶ 6]. However, Aristocrat's

16   interests are safe-guarded by the Protective and Confidentiality Order in this case, which ensures that

17   any confidential information will only be used for this case. [*See* Dkt. 120 (Stipulated Protective and

18   Confidentiality Order), ¶ 5].

19       By contrast, it would be arduous, if not impossible, for IGT to obtain this information

20   independently. The *Torango* case has been pending for over three years. [*See Cynthia Goff as the*

21   *Administrator of the Estate of Lawrence Torango v. Harrah's Operating Co., Inc.*, CV-N-03-0690

22   (D. Nev., filed Jan. 30, 2004)]. Extensive discovery has been taken, including many depositions on

23   these very issues. [Chitwood Decl. ¶ 8]. Some of these depositions were taken in Australia. *Id.* It

24   would be difficult and costly, and is potentially unnecessary, to repeat them.

25       Third, Aristocrat should produce this material with the Bates numbers from the *Torango* case

26   intact. It appears that Aristocrat is obstructing IGT's efforts to discover relevant information from

27

28   POINTS & AUTHORITIES IN SUPPORT OF    12          Case No.:  C-06-3717-MJJ (JLL)
     DEFENDANTS' MOTION TO COMPEL
     DOCUMENT PRODUCTION

1  the *Torango* case by removing *Torango* Bates numbers from the documents it has produced, making

2  it impossible to correlate them with, for example, references to corresponding Bates numbers in

3  publicly-available *Torango* motions and interrogatory responses, to which IGT has access. [*See*,

4

5  ## REDACTED

6      Many of the materials responsive to these requests should already have been produced in the

7  *Torango* case, by the very same counsel that represents Aristocrat in this case. As a result,

8  compliance with this discovery request poses *no burden* for Aristocrat, other than those – such as

9  removing Bates numbers and redacting transcripts – of its own making. Accordingly, Aristocrat

10  should be ordered to provide immediate and full production to IGT.

11      **B. Aristocrat is Withholding Discovery On Agreements**
          **Covering the Patents and Technologies at Issue**
12

13      IGT propounded at least two requests for production regarding Aristocrat's licensing

14  practices related to technology of the asserted patents:

15  **REQUEST NO. 14**

16      All agreements and promises relating to the Asserted Patents or any foreign or
        domestic patent or patent application that claims priority to the same application as
17      any Asserted Patent, including without limitation all assignments, express and
        implied license agreements, covenants not to sue, and lease and sale agreements, and
18      documents evidencing negotiations thereof or attempts to negotiate such agreements
        and any policies regarding licensing. This includes without limitation all documents
19      evidencing oral license agreements, covenants not to sue, and lease and sale
        agreements, and related negotiation documents. This includes, without limitation,
20      agreements with Defendants, between Plaintiffs (including Plaintiffs' alleged license
        by ATA to ATI), with affiliates of either Plaintiff, with domestic and foreign entities,
21      for use in the U.S. or abroad. This includes without limitation patent licenses
        (express or implied) within lease and sale agreements. This also includes, without
22      limitation, all documents discussing the terms of those agreements or promises and
        the value of the patent rights provided therein.
23
24  [Chitwood Decl. Ex. 3, 8:20-9:7].

25  **REQUEST NO. 15**

26      All agreements and promises that include an assignment, license or covenant not to
        sue for any patent or patent application rights concerning gaming, poker machine, slot
27
    POINTS & AUTHORITIES IN SUPPORT OF    13          Case No.: C-06-3717-MJJ (JLL)
28  DEFENDANTS' MOTION TO COMPEL
    DOCUMENT PRODUCTION

machine or gaming console technologies. This includes, without limitation, agreements with Defendants, or with any other domestic and foreign entities, for use in the U.S. or abroad. This also includes, without limitation, all documents addressing the terms of those agreements, and the value of the patent rights provided thereunder.

[Chitwood Decl. Ex. 3, 9:11-18].

Production of this information is relevant, as "[p]rior license agreements 'should carry considerable weight in calculating a reasonable royalty rate.'" *Riles v. Shell Exploration & Production*, 298 F.3d 1302, 1313 (Fed. Cir. 2002) (citing *Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 519 (Fed. Cir. 1995)). *Cf. Fresenius Medical Care Holding Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 652-53 (N.D. Cal. 2004) (granting motion to compel for all license information).

Aristocrat's responses show that they do not intend to provide full production for these requests:

**RESPONSE TO REQUEST NO. 14**

… Subject to the foregoing General and Specific Objections, Aristocrat responds that if it has not produced the licenses between ATI and ATA it will produce such licenses. Moreover, after a reasonable search and to the extent such documents exist and are in the custody, possession and control of Aristocrat and are not privileged or contain work product, Aristocrat will produce its general licensing policies for its patents.

[Chitwood Decl. Ex. 4, 11:12-12:5 (emphasis added)].

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 14**

Subject to and without waiving its General and Specific Objections, and to the extent this request is understood, Aristocrat has produced and will continue to produce non-privileged documents reasonably responsive to this request within its possession, custody, or control *relating to license agreements*, as understood by Aristocrat, relating to the Asserted Patents.

[Chitwood Decl. Ex. 13, 10:24-11:2 (emphasis added)].

**RESPONSE TO REQUEST NO. 15**

… Subject to the foregoing General and Specific Objections, after a reasonable search and to the extent such documents exist and are in the custody, possession and control of Aristocrat and are not privileged or contain work product, Aristocrat will produce *license agreements* relating to the Hyperlink products *in the United States*.

[Chitwood Decl. Ex. 4, 12:12-13:7 (emphasis added)].

The parties have narrowed this dispute during the meet and confer process. The disputed

POINTS & AUTHORITIES IN SUPPORT OF          14          Case No.: C-06-3717-MJJ (JLL)
DEFENDANTS' MOTION TO COMPEL
DOCUMENT PRODUCTION

1   issues include:  1) whether or not Aristocrat must produce materials not specifically self-identified as

2   "license agreements"; 2) whether or not Aristocrat must produce agreements with individual casinos

3   (Aristocrat customers); and 3) whether or not Aristocrat must produce "foreign" agreements.

4         All three disputes involve Aristocrat's refusal to produce relevant agreements regarding the

5   asserted intellectual property.  As discussed above, the requested agreements are relevant, in general,

6   because they "carry considerable weight in calculating a reasonable royalty rate." *Riles*, 298 F.3d at

7   1313 (Fed. Cir. 2002) (citation omitted).  Identification of all licenses and covenants not to sue

8   related to the asserted patents is also particularly relevant to the remedies that Aristocrat may have

9
10  **REDACTED**
11
12
13
14
15
16
17
18

19        **1.   <u>Aristocrat Must Produce All Types of "Agreements" for IP Rights.</u>**

20        IGT's RFPs are not limited to "license agreements."  Instead, they request "all agreements

21  and promises,"  including "assignments, express and implied license agreements, covenants not to

22  sue, and lease and sale agreements, and documents evidencing negotiations thereof or attempts to

23  negotiate such agreements and any policies regarding licensing" and documents related to such

24  agreements and promises.  [Chitwood Decl. Ex. 3, 8:20-9:7 (RFP No. 14), 9:11-18 (RFP No. 15)].

25        IGT has responded that it will simply produce license agreements and general licensing

26  policies.  [Chitwood Decl. Ex. 4, 11:12 – 12:5 (response to RFP No. 14), 12:12 – 13:7 (response to

27  POINTS & AUTHORITIES IN SUPPORT OF    15          Case No.:  C-06-3717-MJJ (JLL)

28  DEFENDANTS' MOTION TO COMPEL
    DOCUMENT PRODUCTION

**REDACTED**

### 2. Aristocrat Must Produce All "Customer" Agreements and Negotiations for IP Rights.

One specific type of agreement that Aristocrat has stated it will not provide during meet and confers is customer agreements. [Chitwood Decl. ¶ 10]. These are the agreements Aristocrat has with individual casinos. These are relevant and responsive because it appears that they specifically

**REDACTED**

the very least, a damages analysis. It is important to understand pricing information in conducting such an analysis, in order to determine what value a patent has in the bundled price. *See, e.g., Johns-Manville Corp v. Guardian Indus. Corp.*, 718 F. Supp. 1310, 1315 (E.D. Mich. 1989). This

**REDACTED**

POINTS & AUTHORITIES IN SUPPORT OF    16    Case No.: C-06-3717-MJJ (JLL)
DEFENDANTS' MOTION TO COMPEL
DOCUMENT PRODUCTION

1    In addition to being relevant to damages, production of the contracts may help IGT locate

2    additional evidence, namely, Aristocrat's own prior art gaming machines. Aristocrat has denied

3
4
5                                    **REDACTED**
6
7
8
9

10    To the extent Aristocrat suggests that production of all such agreements is burdensome, IGT

11    is amenable to Aristocrat's provision of summary information, identifying: 1) all customers of

12
13                                    **REDACTED**
14

15    In either case, immediate production should be compelled.

### 3.  <u>Aristocrat Must Produce "Foreign" Materials.</u>

17    Aristocrat refuses to produce any responsive materials from outside the United States.

18    [Chitwood Decl. Ex. 4, 12:12-13:7 (response to RFP. No. 15); Ex. 13, 10:24 – 11:2 (supplemental

19    response to RFP No. 15)]. However, non-U.S. agreements may be relevant for a variety of reasons.

20    Foreign agreements may cover U.S. rights or rights to a U.S. patent. Similarly, foreign agreements

21    will provide "comparable" license terms. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F.

22    Supp. 1116, 1120 (S.D.N.Y. 1970). In either case, such agreements are relevant to damages, and

23    specifically to the *Georgia Pacific* factors for determining a reasonable royalty. *See Joy Techs. Inc.*

24    *v. Flakt, Inc.*, 954 F. Supp. 796, 807-08 (D. Del. 1996) (discussing a European license on counterpart

25    technology in a reasonable royalty analysis).

26
27    POINTS & AUTHORITIES IN SUPPORT OF      17            Case No.: C-06-3717-MJJ (JLL)
28    DEFENDANTS' MOTION TO COMPEL
      DOCUMENT PRODUCTION

**4.  Aristocrat Must Produce Materials Related to The terms of the<br>Agreements and the Value of the Patent Rights Provided Therein.**

Both of IGT's Requests for Production make clear that they call for documents related to the terms of the agreements and the value of the patent rights under the agreement.  [*See* Chitwood Decl. Ex. 3, 8:20-9:7 (RFP No. 14) ("This also includes, without limitation, all documents discussing the terms of those agreements or promises and the value of the patent rights provided therein.")]; Chitwood Decl. Ex. 3, 9:11-18 (RFP No. 15) ("This also includes, without limitation, all documents addressing the terms of those agreements, and the value of the patent rights provided thereunder.")].

**REDACTED**

standing (determining which entity has the right to pursue infringement claims) and damages (determining the value of reasonable royalty based on similar license agreements).  Related

**REDACTED**

In sum, the Court should compel production of all relevant agreements, foreign and domestic.

POINTS & AUTHORITIES IN SUPPORT OF     18          Case No.:  C-06-3717-MJJ (JLL)
DEFENDANTS' MOTION TO COMPEL
DOCUMENT PRODUCTION

### C. Aristocrat Has Not Provided Full Production of Its Own Systems.

IGT has propounded RFPs for documents related to Aristocrat's own systems. Collectively, IGT is requesting documents that relate to: 1) the conception and reduction to practice of the alleged "invention"; 2) documents related to the functionality of the asserted Hyperlink technology; and 3) documents related to promotion, offers for sale, sales and uses of the Hyperlink technology.

#### 1. Aristocrat Must Provide Information Related to its "Conception" and "Reduction to Practice"

Materials related to conception and reduction to practice are clearly relevant to this patent litigation. *Cf. Fresenius,* 224 F.R.D. at 649-50. In fact, the Northern District of California requires early production of some of these materials pursuant to Patent Local Rule 3-2(b):

> All documents evidencing the conception, reduction to practice, design, and development of each claimed invention, which were created on or before the date of application for the patent in suit or the priority date identified pursuant to Patent L.R. 3-1(e), whichever is earlier….

In dispute is whether Aristocrat can properly limit its production to the specific categories of documents identified in PLR 3-2. IGT's RFPs differ from PLR 3-2 in two significant ways: 1) they cover more time, and 2) they ask for more information.

The relevant requests are RFP Nos. 19 and 21:

#### REQUEST NO. 19

> All documents and things related to the alleged inventions claimed in the Asserted Patents, including without limitation all documents and things relating to their conception and reduction to practice. This includes without limitation documents concerning any diligence or lack thereof in reducing to practice the claimed methods, and showing the roles of Scott Olive, Nicholas Bennett and anyone else in the conception and reduction to practice of any invention described in the Asserted Patents, or described in any patent or application that claims priority to one or more of the same applications as the Asserted Patents.

[Chitwood Decl. Ex. 3, 11:1-8].

#### REQUEST NO. 21

> All documents relating to, referring to, or discussing the prize or game triggers disclosed in any Priority Application, and any alternative or prior art prize or game trigger considered or evaluated by Aristocrat, Scott Olive, Nicholas Bennett, or

POINTS & AUTHORITIES IN SUPPORT OF    19        Case No.: C-06-3717-MJJ (JLL)
DEFENDANTS' MOTION TO COMPEL
DOCUMENT PRODUCTION

1   anyone on their behalf during the course of the conception, reduction to practice and
    patent prosecution of the purported inventions claimed in the Asserted Patents. This
2   includes without limitation any government regulations or proposed regulations
    relating thereto considered or evaluated by Aristocrat, Scott Olive or Nicholas
3   Bennett, or anyone on their behalf during the course thereof, any documents showing
    that or discussing whether any aspects of the claimed invention were required by any
4   government regulation. This also includes without limitation any documents showing
    any problems in enabling any of the triggers disclosed or considered in any Hyperlink
5   Products or other Aristocrat games, the steps, time, experimentation and work it took
    to get any such trigger to work, the benefits or disadvantages of any such trigger, and
6   the reasons why different triggers are described in the July 1997, September 1997,
    July 1998 applications and in the issued claims.
7

8   [Chitwood Decl. Ex. 3, 12:1-14].

9       To each of these requests, Aristocrat states that it has and will produce documents that are

10  responsive to PLR 3-2, as well as regulatory approval documents. [Chitwood Decl. Ex. 4, 16:7-25,

11  18:9-27; Ex. 13, 14:6-13, 16:20-24].

12      The first dispute concerns the time period for which Aristocrat should provide the requested

13  materials: either up to and including 1997, or up to and including 2000. P.L.R 3-2(b) requires

14  disclosure of documents created on or before the date of the application, or the claimed priority date,

15  **REDACTED**

16

17  claims must be fully supported by the priority application. *See, e.g., In re Gosteli*, 872 F.2d 1008,

18  1011 (Fed. Cir. 1989). IGT disputes whether Aristocrat is entitled to claim a priority date earlier

19  than the U.S. filing date of the patents in suit (i.e., in 2000). [Dkt. 79 (IGT's Answer, Defenses and

20  Counterclaims to First Amended Complaint), ¶¶ 59-82]. The proper priority date determines when

21  things such as offers for sale, sales, publications describing, use, or knowledge of the covered

22  Hyperlink games are relevant to patent validity in this case. While this issue will ultimately be

23  decided in this case, IGT requests that Aristocrat produced the requested information for the interim

24  period.

25      The second dispute concerns the scope of the production requests. Aristocrat has agreed to

26  provide materials responsive to PLR 3-2(b), as well as regulatory approval information in the U.S.

27  [Chitwood Decl. Ex. 13, 11:9-8]. However, the requests seek additional relevant information. For

    POINTS & AUTHORITIES IN SUPPORT OF    20         Case No.: C-06-3717-MJJ (JLL)
28  DEFENDANTS' MOTION TO COMPEL
    DOCUMENT PRODUCTION

example, in addition to what is requested by PLR 3-2, the requests ask for documentation on "diligence" (the actions taken during the period of time between "conception" and "reduction to practice") and "problems in enabling" the technology. [Chitwood Decl. Ex. 3, 11:1-8 (RFP. No. 19), Ex. 3, 12:1-14 (RFP. No. 21)]. Moreover, PLR 3-2(b) is limited to documents related to the "claimed invention." IGT's requests also seek information for any of the related patents. [Chitwood Decl. Ex. 1, 7:1-3 (RFP. No. 7), Ex. 3, 11:12-24 (RFP. No. 20)]. These additional inquiries are relevant to validity. *See, e.g.*, 35 U.S.C. § 112(2) (describing the "enablement" requirement).

Aristocrat cannot withhold the relevant production sought by these requests, simply because their scope is broader than that of PLR 3-2. Complete production should be ordered.

### 2. Aristocrat Must Provide Documents Related to the Functionality of the Asserted "Hyperlink" Technology

IGT propounded two RFPs specifically directed to the operation of Aristocrat's purported embodiments of the Hyperlink technology:

**REQUEST NO. 27**

Documents and things sufficient to show the changes in the functionality, software, hardware or other redesigns of the Hyperlink Products between 1990 and the present. This includes without limitation documents evidencing any changes to triggering mechanism and the reasons for such changes and documents evidencing the regulatory approval of any such changes or redesigns.

[Chitwood Decl. Ex. 3, 15:1-5].

**REQUEST NO. 11**

All documents and things showing the design, structure, operation, implementation, promotion, offers for sale, sales or use of all versions of the following games, systems, software, controllers, and/or products prior to May 2000: Caschcade, Aces, Best and Fairest, Cricketer, Surprize, Strike Me Lucky, Clockwise, Sporting Chance, Winner's Cheque, DACOM and related hardware or software, and any other game that one or both Plaintiffs contends, or has ever represented, is a Hyperlink Product. This includes without limitation documents showing the earliest sales and offers to sell each such game, system, software, controller, and product in the U.S., the earliest public disclosures of the bonus features in such games anywhere in the world, and the most complete public disclosures of the bonus features in the such games anywhere in the world prior to July 8, 1997, September 9, 1997, July 8, 1998, January 11, 2000, and April 10, 2000.

POINTS & AUTHORITIES IN SUPPORT OF     21          Case No.: C-06-3717-MJJ (JLL)
DEFENDANTS' MOTION TO COMPEL
DOCUMENT PRODUCTION

[Chitwood Decl. Ex. 3, 7:7-17].

The operation of the Hyperlink products is relevant to this case and related materials should be produced. *See Fresenius Medical Care Holding Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 656-57 (N.D. Cal. 2004) (granting motion to compel production from the patentee for "all documents relating to research or development of the subject matter claimed in each patent-in-suit or related patent"). Between 1990 and 2000, any changes in the functionality of the Hyperlink games pertain to the development and reduction to practice of the claimed inventions, the relevance of which is set forth above.

Between 2000 and the present, such information is relevant to determine whether the Hyperlink Products actually "practice" the asserted patents, so that these products could be considered relevant for analyzing "commercial success". *See Nazomi Communications, Inc. v. Arm Holdings PLC*, No. C 02-02521-JF(RS), 2003 WL 24054504, *3 (N.D. Cal. Sept. 3, 2003) ("The commercial success of embodying technology can be used by a patent infringement plaintiff to defeat a claim that a patent is invalid for obviousness."). To show commercial success, a patentee must demonstrate, among other things, "that the successful product is the invention disclosed and claimed in the patent...." *J.T. Eaton & Co. v. Atlantic Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997) (reversing the district court's finding of commercial success, because the patentee failed to show that its products "embody the claimed invention"). As a result, this Court has compelled discovery, including the production of source code, regarding whether or not a patentee's products actually practice the asserted patent. *See Nazomi Communications, Inc. v. Arm Holdings PLC*, No. C 02-02521-JF(RS), 2003 WL 24054504, *3 (N.D. Cal. Sept. 3, 2003) ("[T]he Court orders [plaintiff] to produce the RTL code [for its products], as well as to identify any and all documents it claims support its contention that its products embody the [asserted] patent.").

This information is also relevant to the statutory requirements regarding enablement, best

## REDACTED

POINTS & AUTHORITIES IN SUPPORT OF       22           Case No.: C-06-3717-MJJ (JLL)
DEFENDANTS' MOTION TO COMPEL
DOCUMENT PRODUCTION

**REDACTED**

unexplained, particularly as it relates to Mr. Torango's prior disclosure of the claimed inventions to Aristocrat. The production of documents showing the changes in core functionality of the Hyperlink products will help explain these issues.

Aristocrat has not agreed to produce all relevant documents. It responded as follows:

**RESPONSE TO REQUEST NO. 27**

Subject to the foregoing General and Specific Objections, after a reasonable search and to the extent such documents exist and are in the custody, possession and control of Aristocrat and are not privileged or contain work product, Aristocrat will source code for one or two exemplars of its Hyperlink products. Furthermore, on January 11, 2007, Aristocrat produced regulatory submission documents relating to its Hyperlink products.

[Chitwood Decl. Ex. 4, 23:10 – 27:7].

**RESPONSE TO REQUEST NO. 11**

Subject to the foregoing General and Specific Objections, after a reasonable search and to the extent such documents exist and are in the custody, possession and control of Aristocrat and are not privileged or contain work product, Aristocrat will produce operation manuals and advertisements relating to the games listed in Request No.11. Aristocrat will also produce any offers for sale of the games listed in Request No. 11 in the United States.

[Chitwood Decl. Ex. 4, 8:3 – 9:2].

While code may be sufficient to show operation, "one or two exemplars of its Hyperlink products" are insufficient to document all relevant changes over the relevant period. "[O]peration manuals and advertisements" will also be helpful (and some have been produced), but it does not appear that such information has been produced for "all versions" as requested. [Chitwood Decl., ¶ 12]. Presumably Aristocrat has these documents readily available to it. Having broad relevance to many issues in this action, the production must be compelled.

**3.   Aristocrat Must Provide Documents Related to Its Own Prior Art**

There can be no disagreement that, in the abstract, a patentee's own work can constitute

invalidating prior art if it is sold, offered for sale, in public use, or known before certain dates.  *See*

35 U.S.C. § 102.  IGT requests this information in RFP Nos. 11 and 29:

**REQUEST NO. 11**

All documents and things showing the design, structure, operation, implementation,
promotion, offers for sale, sales or use of all versions of the following games,
systems, software, controllers, and/or products prior to May 2000:  Caschcade, Aces,
Best and Fairest, Cricketer, Surprize, Strike Me Lucky, Clockwise, Sporting Chance,
Winner's Cheque, DACOM and related hardware or software, and any other game
that one or both Plaintiffs contends, or has ever represented, is a Hyperlink Product.
This includes without limitation documents showing the earliest sales and offers to
sell each such game, system, software, controller, and product in the U.S., the earliest
public disclosures of the bonus features in such games anywhere in the world, and the
most complete public disclosures of the bonus features in the such games anywhere in
the world prior to July 8, 1997, September 9, 1997, July 8, 1998, January 11, 2000,
and April 10, 2000.

[Chitwood Decl. Ex. 3, 7:7-17].

**REQUEST NO. 29**

All documents and things concerning the "Cashcade" prior art and other prior art
identified in the background of the invention in either Asserted Patent, including
without limitation all documents showing how such prior art worked, how it was
developed, who developed it, and any prior art printed publications or other
documents related to it.

[Chitwood Decl. Ex. 3, 15:16-20].

Aristocrat agrees to provide operation manuals, advertisements, and offers for sale of the

games in the United States.  [Chitwood Decl. Ex. 4, 25:7-26].  To date, IGT does not believe all such

documents have been produced.  [Chitwood Decl., ¶ 13].  Moreover, Aristocrat has not agreed to

produce documents related to "sales" and "uses" of the named products.  [Chitwood Decl., ¶ 16].

Sales and uses are as relevant to an analysis under 35 U.S.C. § 102 as are offers for sale.  *See* 35

U.S.C. § 102 ("(a) the invention was known or used by others in this country, or patented or

described in a printed publication in this or a foreign country, before the invention thereof by the

applicant for patent, or (b) the invention was patented or described in a printed publication in this or

POINTS & AUTHORITIES IN SUPPORT OF     24
DEFENDANTS' MOTION TO COMPEL
DOCUMENT PRODUCTION

Case No.:  C-06-3717-MJJ (JLL)

1  a foreign country or in public use or on sale in this country, more than one year prior to the date of

2  the application for patent in the United States").

3      Complete production should be compelled.

4  **III.    CONCLUSION**

5      For the foregoing reasons, Aristocrat should be compelled to immediately provide full

6  production for the requests at issue, including the following:

7      - All documents, including without limitation discovery responses, previously
        produced by Aristocrat to IGT in the related Torango case, and transcripts and
8        video of all depositions in which any portion is designated "confidential" by
        Aristocrat in the related Torango case.
9      - All agreements, foreign and domestic, related to Aristocrat's purported
        "Hyperlink IP" or the asserted patents.
10     - All documents related to the abovementioned agreements, including negotiations
        thereof, explanation of terms, calculation of value, etc.
11     - All documents related to conception, diligence, reduction to practice and the
        regulatory process.
12     - Code and descriptive documents (e.g., user manuals) for all versions of Aristocrat
        products that purportedly practice, or did practice, any method claimed in the
13       patents at issue, or that Aristocrat refers to as a "Hyperlink" game.

14

15

16                          Respectfully submitted,

17  Dated this 2nd day of May, 2007     By:  _s/ Lane M. Chitwood_____
                                        Lane M. Chitwood (Admitted *Pro Hac Vice*)
18                                      lane.chitwood@klarquist.com
                                        Stephanie S. Irvine (Admitted *Pro Hac Vice*)
19                                      stephanie.irvine@klarquist.com
                                        Jeffrey S. Love (State Bar No. 195068)
20                                      jeffrey.love@klarquist.com
                                        Garth A. Winn (Admitted *Pro Hac Vice*)
21                                      garth.winn@klarquist.com
                                        KLARQUIST SPARKMAN, LLP
22                                      121 S.W. Salmon Street, Suite 1600
                                        Portland, OR  97204-2988
23                                      Telephone: (503) 595-5300
                                        Facsimile: (503) 595-5301
24

25
                                        Eric L. Wesenberg (State Bar No. 139696)
26                                      ewesenberg@orrick.com
                                        Gabriel M. Ramsey (State Bar No. 209218)
27  POINTS & AUTHORITIES IN SUPPORT OF     25     Case No.: C-06-3717-MJJ (JLL)
28  DEFENDANTS' MOTION TO COMPEL
    DOCUMENT PRODUCTION

gramsey@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:  (650) 614-7400
Facsimile:  (650) 614-7401

*Attorneys for Defendants and Counterclaimants*
INTERNATIONAL GAME TECHNOLOGY *and* IGT

1

<u>**CERTIFICATE OF SERVICE**</u>

2     The undersigned hereby certifies that on May 2, 2007, the foregoing **DEFENDANTS'**

3   **NOTICE OF MOTION AND MOTION TO COMPEL ARISTOCRAT'S DOCUMENT**

4   **PRODUCTION UNDER RULE 37** was electronically filed with the Clerk of the Court using the

5   CM/ECF System and that the same was served by electronic mail to the following:

6

7         Arturo E. Sandoval
          asandoval@mwe.com
8         Terrence P. McMahon
          tmcmahon@mwe.com
9         Anthony de Alcuaz
          adealcuaz@mwe.com
10        Robert Blanch
          rblanch@mwe.com
11        MCDERMOTT WILL & EMERY LLP
          3150 Porter Drive
12        Palo Alto, California  94041

13

14        *Attorneys for Plaintiffs and Counterclaim-Defendants*
          ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY LIMITED and
15        ARISTOCRAT TECHNOLOGIES, INC.

16                    <u>s/ Lane M. Chitwood</u>

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE                                Case No.:  C-06-3717-MJJ (JLL)