United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   ARISTOCRAT TECHNOLOGIES                    No. C06-3717 MJJ
     AUSTRALIA PTY LIMITED and
12   ARISTOCRAT TECHNOLOGIES, INC.,             **ORDER GRANTING DEFENDANTS'**
                                                **MOTION FOR SUMMARY JUDGMENT**
13                  Plaintiffs,                 **OF INVALIDITY ON GROUNDS THAT**
                                                **THE '215 APPLICATION WAS**
14     v.                                       **ABANDONED UNDER 35 U.S.C. § 371**
                                                **AND § 133.**
15   INTERNATIONAL GAME TECHNOLOGY
     and IGT,
16
                    Defendant.
17   _____/

18

19   **I.      INTRODUCTION**

20          Before the Court is Defendants International Game Technology and IGT's (collectively,

21   "Defendants") Motion for Summary Judgment of Invalidity on Grounds that the '215 Patent Was

22   Abandoned Under 35 U.S.C. § 371 and § 133.[1]  Plaintiffs Aristocrat Technologies Australia Pty

23   Limited ("ATA") and Aristocrat Technologies, Inc. ("ATI") (collectively "Plaintiffs" or

24   "Aristocrat") oppose the motion.  For the following reasons, the Court **GRANTS** Defendants'

25   Motion for Summary Judgment.

26   **II.     FACTUAL BACKGROUND**

27          This action presents a patent infringement dispute pertaining to certain technology related to

28   electronic gaming machines.  Unless otherwise noted, for purposes of the pending motion, the Court

---

[1]Docket No. 166.

1    finds the following facts to be undisputed.

2        **A.      The Parties**

3        Plaintiff ATA is an Australian company with its principal place of business in Australia.

4    (First Amended Complaint ("FAC") ¶ 1; Def.'s Ans. ¶ 1.)  ATA provides a range of gaming

5    solutions such as software, systems, and hardware, including electronic gaming machines.  (FAC ¶

6    1.)  Plaintiff ATI is a Nevada corporation with its principal place of business in Las Vegas, Nevada.

7    (FAC ¶ 2; Def.'s Ans. ¶ 1.)  ATI develops and distributes ATA products.  (FAC ¶ 2.)

8        Defendants International Game Technology and IGT are Nevada corporations with their

9    principal places of business in Reno, Nevada.  (FAC ¶¶ 3-4; Def.'s Ans. ¶¶ 3-4.)  IGT designs and

10   manufactures electronic gaming machines for sale in the United States, including the State of

11   California.  (Def.'s Ans. ¶ 5.)  The parties are in dispute as to the particular type of business

12   conducted by International Game Technology.  (FAC ¶ 5; Def.'s Ans. ¶ 5.)

13       **B.      The Operative Claims and Counterclaims**

14       On December 15, 2006, Plaintiffs filed their First Amended Complaint alleging two claims:

15   (1) Infringement of U.S. Patent No. 7,056,215 B1 ("the '215 Patent"); and (2) Infringement of U.S.

16   Patent No. 7,108,603 B2 ("the '603 Patent").[2]  On January 2, 2007, Defendants filed their responsive

17   pleading consisting of an answer, a list of affirmative defenses, and six counterclaims: (1)

18   Declaration of Non-Infringement as to the '215 Patent; (2) Declaration of Patent Invalidity as to the

19   '215 Patent; (3) Declaration of Patent Unenforceability as to the '215 Patent; (4) Declaration of

20   Non-Infringement as to the '603 Patent; (5) Declaration of Patent Invalidity as to the '603 Patent;

21   and (6)  Declaration of Patent Unenforceability as to the '603 Patent.[3]

22       **C.      The File History**

23       On July 8, 1997 and September 9, 1997, Plaintiffs filed in Australia provisional patent

24   applications PO 7780 and PO 9090, respectively.  (Joint Statement of Undisputed Fact ("JS") at ¶¶

25   1-2.)  One year later, on July 8, 1998, Plaintiffs filed in Australia, under the Patent Cooperation

26

27

28       [2]Docket No 76.

         [3]Docket No. 79.

2

**United States District Court**
For the Northern District of California

1   Treaty ("PCT")[4], an international application ("PCT Application") claiming priority to the above-

2   referenced provisional applications.  (*Id.* at ¶¶ 3-4.)[5]  As more fully described below, the July 8,

3   1998  international PCT Application ultimately issued in the United States in 2006 as the '215

4   Patent.

5          The World Intellectual Property Organization published the PCT Application on January 21,

6   1999.  (*Id.* at ¶ 5.)  The resulting deadline for Plaintiffs to file the national fee for the U.S. national

7   stage of its PCT Application in the United States Patent & Trademark Office ("PTO") was January

8   10, 2000[6].  (*Id.* at ¶ 6.)  One day after the deadline expired, on January 11, 2000, the PTO received

9   the national fee for the U.S. national stage of Plaintiffs' PCT Application.  (*Id.* at ¶ 7.)  Accordingly,

10  the PTO gave Plaintiff's PCT Application a filing date of January 11, 2000.  (*Id.*)

11         On or about June 13, 2000, the PTO mailed a "Notice of Abandonment" of the '215

12  Application to Plaintiffs' attorney of record, Mr. Islam.[7]  (*Id.* at ¶ 9, Ex. 9.)  The "Notice of

13  Abandonment" included the following statements:

14

15                           **COMMUNICATION**

16         The above-identified application was **ABANDONED** on 11 January 2000 for failure
           to pay the basic national fee 30 month [sic] from the priority date for international
           application no. PCT/AU98/00525.

17
                                   RECOMMENDATION
18
           Applicants may wish to consider filing a petition to the Commissioner under 37 CFR
19

20         [4]The Patent Cooperation Treaty is an international patent law treaty, concluded in 1970, amended in 1979, and
     modified in 1984 and 2001.  It provides a unified procedure for filing patent applications to protect inventions in each of its
21   Contracting States.

22         [5]An international PCT application can fairly be thought of as a bundle of many national applications; from it, one
     may pursue the application in many nations.  But, for each such national patent to issue, the PCT application must eventually
23   be prosecuted as a national application in each country, in accordance with that country's patent laws.  *See, e.g., Voda v.*
     *Cordis Corp.*, 476 F.3d 887, 890, 899 (Fed. Cir. 2007) ("The foreign patents issued from a common Patent Cooperation
24   Treaty ('PCT') application. . . . [T]he text of the PCT maintains the independence of each country's patents."); *See also*
     Patent Cooperation Treaty, 28 U.S.T. 7645.
25
           [6]January 10, 2000 is 30 months, plus a weekend, after July 8, 1997.  35 U.S.C. § 371.
26
           [7]On April 10, 2000, Plaintiff had filed with the PTO a "Declaration and Power of Attorney," signed by Scott Olive,
27   dated January 17, 2000, stating: "As a named inventor, I hereby appoint Stanley I. Rosen [ ], Richard I. Samuel [ ], Shaman
     Islam [ ], Theresa A. O'Rourke [ ], and Nicholas DuBois [ ] whose address is Friedman Siegelbaum, Seven Becker Farm
28   Road, Rossland, New Jersey, 07068-1757 as my attorneys, to prosecute this application, and to transact all business in [the
     PTO] connected therewith."  (*Id.* at ¶ 8, Ex. 1.)

United States District Court

For the Northern District of California

1.137(a) or (b) requesting that the application be revived. Any petition filed under 37 CFR 1.137(a) and/or a petition under 37 CFR 1.137(b) requesting that the application be revived must meet the criteria in the recent revision of 37 CFR 1.137. See 62 Fed. Reg. 53131 (October 10, 1997); 1203 Off. Gaz. Pat. Office 63 (October 21, 1997) (Effective Date: 01 December 1997).

Under 37 CFR 1.137(a), a petition requesting that the application be revived on the grounds of unavoidable delay must be filed promptly after applicant becomes aware of the abandonment and such petition must be accompanied by: (1) an adequate showing of the cause of unavoidable delay, (2) a proper reply, (3) the petition fee required by law and (4) a terminal disclaimer and fee in all applications filed before 08 June 1995.

Under 37 CFR 1.137(b), a petition requesting that the application be revived on the grounds of unintentional delay must be accompanied by: (1) a proper reply; (2) the petition fee required by law, (3) a statement that the "entire delay in filing the required reply from the due date for the reply to the filing of a grantable petition pursuant to this paragraph was unintentional" and (4) any terminal disclaimer and fee required pursuant to 37 CFR 1.137(c). The Commissioner may require additional information where there is a question whether the delay was unintentional. The petition fee required by law is $1210.00 for a small entity.

The filing of any petition under the unintentional standard cannot be intentionally delayed. A person seeking revival due to unintentional delay cannot make a statement that the delay was unintentional unless the entire delay was unintentional. A statement that the delay was unintentional is not appropriate if the petitioner intentionally delayed the filing of a petition for revival under 37 CFR 1.137(b). There are three periods to be considered during the evaluation of a petition under 37 CFR 1.137: (1) the delay in the reply that originally resulted in the abandonment; (2) the delay in filing an initial petition under 37 CFR 1.137 to revive the application; and (3) the delay in filing a grantable petition under 37 CFR 1.137 to revive the application. See 62 Fed. Reg. 53131 (October 10, 1997); 1203 Off. Gaz. Pat. Office 63 (October 21, 1997).

This recommendation to file a petition under 37 CFR 1.137(a) or (b) should not be construed as an indication as to whether or not any such petition(s) will be favorably considered.

(*Id*. at ¶ 10, Ex. 2.)

On September 15, 2000, Mr. Islam filed a "Petition Under 27 C.F.R. § 1.10(c) or § 1.10(d) to Correct Date-In' of the '215 Application." (*Id*. at ¶ 11.) On or about June 5, 2001, the PTO issued a notice addressed to Plaintiffs' attorney of record, Mr. Islam, denying Plaintiffs' petition to change the "date-in" of the '215 Application and reaffirmed abandonment of the '215 Application. (*Id*. at ¶ 14, Ex. 3.) The notice stated, among other things:

On March 21 2000, the United States Designated /Elected Office (DO/EO/US) mailed a Notification of Missing Requirements (Form PCT/DO/EO905) and Notification of a Defective Oath or Declaration (Form PCT/DO/EO/917) indicating that the declaration was not executed in accordance with 37 CFR 1.66 or 37 CFR 1.68. The notification set a one-month time limit to respond. On 10 April 2000, applicant filed a Response to Notification of Missing requirements Under 35 U.S.C.

United States District Court

For the Northern District of California

4

371 in the United States Designated/Elected Office (DO/EO/US' which was accompanied by executed declaration and power of attorney. On 13 June 2000, the PCT Legal Office mailed Communication and Notification of Abandonment. On 19 September, 2000 applicant filed present petition stating that 'we are filing this petition under 37 CFR 1.10(c) or 1.10(d) to amend the "date in" to reflect the actual date the undersigned deposit with the United States Postal Express Mail under 37 Cfr [sic] 1.10(a) the application and requisite national fee. . . . For the reasons discussed above, applicant's request that the office accept the national application papers as filed on 10 January 2000 is **DISMISSED** without prejudice. The application remains **ABANDONED**. Any reconsideration on the merits of this petition must be filed within **TWO (2) MONTHS** from the mail date of this decision. Any reconsideration request should include a cover letter entitled "Renewed Petition Under 37 CFR 1.182. No petition fee is required. Extensions of time may be obtained under 37 CFR 1.136(a).

(*Id.* at ¶ 15, Ex. 3.) The PTO determined that Mr. Islam's petition to correct the "Date-In" had not provided sufficient corroborative evidence under 37 C.F.R. 1.10, such as "a copy of the Express Mail Label,"[8] or "a statement from a USPS employee having firsthand knowledge of the time of the last pickup on 10 January 2000." (*Id.*)[9] Neither Mr. Islam or anyone else filed any additional written papers with the PTO pertaining to the '215 Application until July 18, 2002. (*Id.* at ¶ 16.)

On July 18, 2002, Mr. Islam filed a petition to revive the '215 Application, entitled "Petition For Revival Of An Applicatio [sic] For Patent Abandoned Unintentionally Under 37 C.F.R. 1.137(b)." (*Id.* at ¶¶ 17-18.) The petition to revive contained the following statement, among other things, on page 1:

Burden Hour Statement: This form is estimated to take 1.0 hour to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, D.C. 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, Washington, DC 20231.

---

[8]Mr. Islam did not submit an Express Mail receipt to the PTO in support of the Petition to Correct "Date-In." (*Id.* at ¶ 12.) Plaintiff has not produced in this case, and based on its current information, does not now have in its possession, custody or control, an Express Mail receipt, among other things, that could have supported its Petition to Correct "Date-In." (*Id.* at ¶ 13.)

[9]As discussed in more detail below, Plaintiffs contend there is a question of fact as to whether or not Mr. Islam actually received the June 5, 2001 letter, thereby precluding summary judgment on the current record. As support for the existence of this question of fact, Plaintiffs point to a January 23, 2002 facsimile from Anthony Smith of the PTO to Serle Mosoff (an attorney who worked with Mr. Islam). (Declaration of Arturo E. Sandoval ("Sandoval Decl.") Ex. D.) The January 23, 2002 facsimile bore the words "05 June 2001 Decision" and attached a copy of the PTO's June 5, 2001 decision notifying Mr. Islam that he had failed to provide sufficient corroborative evidence in support of his "Date-In" petition. Plaintiffs contend that if Mr. Islam and Plaintiffs did not receive the PTO's June 5, 2001 decision until January 23, 2002, then Plaintiffs' July 18, 2002 Petition to Revive the '215 Patent is timely under 35 U.S.C. § 133. (Pls.' Opp. at 4:2-6.)

1  (*Id.* at ¶ 19, Ex. 4.)  The petition to revive contained the following statement, among other things, on

2  page 2:

>  STATEMENT:  The entire delay in filing the required reply until the filing of a
>  grantable petition under 37 CFR 1.137(b) was unintentional.  [NOTE:  The United
>  States Patent and Trademark Office may require additional information if there is a
>  question as to whether either the abandonment or the delay in filing a petition under
>  37 CFR 1.137(b) was unintentional (MPEP 711.02(c)(III)(C) and (D))].

6  (*Id.*)  A portion of the statement, and the unsigned signature line immediately below it, appeared as

7  follows:

>  4.  STATEMENT:  The entire delay in filing the required reply until the filing of a grantable petition under 37 CFR
>      1.137(b) was unintentional. [NOTE. The United States Patent and Trademark Office may require additional information
>      if there is a question as to whether either the abandonment or the delay in filing a petition under 37 CFR 1.137(b) was
>      unintentional (MPEP 711.02(c)(111)(C) and (D))]
>
>  **WARNING:  Information on this form may become public.  Credit card information should not be included on this
>  form.  Provide credit card information and authorization on PTO-2038.**

| Date | Signature |
|------|-----------|
| Telephone Number: (212) 940-8564 | Shahan Islam Typed or printed name |
| | Address KMZ Rosenman 575 Madison Avenue New York, NY  10022 |

15  (*Id.*)

16  Also on July 18, 2002, Mr. Islam filed a "Second Preliminary Amendment" and a "Petition

17  For Accelerated Examination Under MPEP 708.02(VIII)."  (*Id.* at ¶¶ 22-23.)  Mr. Islam filed a

18  signed Affidavit In Support Of Petition For Accelerated Examination Under MPEP 708.02(VIII).

19  (*Id.* at ¶ 24.)  Paragraph 5 of Mr. Islam's Affidavit states, in its entirety,

>  5.   A pre-examination search was made in various computerized databases.  The search
>  yielded the same results as in the prior international proceedings of this application.  The
>  following references were noted as being most relevant:
>
>      1. Australian Patent Abstract AN_A_5,3370/86 <u>Poker Machine</u>
>      2. U.K. Patent Application 2153572A <u>Gaming Machine</u>
>      3. Australian Patent AU_A_33868/89 <u>Controlling Apparatus For Gaming</u>
>      <u>Machine</u>

25  (*Id.* at ¶ 25.)

26  The PTO's September 3, 2002 Decision on Petition stated, among other things: "All of the

27  requirements of 37 C.F.R. 1.137(b) [of unintentional delay] have been met and the applicant's

28  petition to revive is **<u>GRANTED</u>**."  (*Id.* at ¶ 26.)  Subsequent to Mr. Islam's filing of the petition to

United States District Court

For the Northern District of California

1   revive, the PTO has not requested and Plaintiffs have not provided any additional information

2   supporting the petition.  (*Id*. at ¶ 27.)

3       On April 8, 2005, Plaintiffs' counsel of record filed the application for the '603 Patent.  (*Id*.

4   at ¶ 28.)  On June 6, 2006 and September 19, 2006, the '215 Patent and the' 603 Patent issued,

5   respectively.  (*Id*. at ¶¶ 29-30.)

6       According to Defendants, the PTO's file history provides the undisputed facts necessary to

7   decide the pending motion and enter a final judgment in their favor for the entire case.  Defendants

8   seek an order granting summary judgment on their Second Defense and Second and Fifth

9   Counterclaims, declaring that: (1) the '215 Patent is invalid because Plaintiff abandoned the '215

10  Application under 35 U.S.C. § § 371 and 133, and never lawfully revived it on the grounds required

11  by those statutes; and (2) the '603 patent is invalid under 35 U.S.C. § 102(b), because the '215

12  Application has the same specification  and was published in 1999 and abandoned in 2000, years

13  before the '603 Application was filed in 2005.

14  **III.    LEGAL STANDARD**

15      Federal Rule of Civil Procedure 56(c) authorizes summary judgment if there is no genuine

16  issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See*

17  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears the initial

18  burden of demonstrating the basis for the motion and identifying the portions of the pleadings,

19  depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence

20  of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving

21  party meets this initial burden, the burden then shifts to the non-moving party to present specific

22  facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324;

23  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The non-movant's

24  bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion

25  for summary judgment.  *Anderson*, 477 U.S. at 247-48.  An issue of fact is material if, under the

26  substantive law of the case, resolution of the factual dispute might affect the case's outcome.  *Id.* at

27  248.  Factual disputes are genuine if they "properly can be resolved in favor of either party."  *Id.* at

28  250.  Thus, a genuine issue for trial exists if the non-movant presents evidence from which a

United States District Court

For the Northern District of California

1    reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the

2    material issue in its favor.  *Id.*  However, "[i]f the [non-movant's] evidence is merely colorable, or is

3    not significantly probative, summary judgment may be granted."  *Id.* at 249-50 (internal citations

4    omitted).

5        Summary judgment is as appropriate in a patent case as it is in any other case.  *C.R. Bard Inc.*

6    *v. Advanced Cardiovascular Systems*, 911 F.2d 670, 672 (Fed. Cir. 1990).  A patent is presumed

7    valid.  35 U.S.C. § 282.  The burden is on the party challenging the patent to show, by clear and

8    convincing evidence, that the patent is invalid.  *See, e.g., Hybritech Inc. v. Monoclonal Antibodies,*

9    *Inc.*, 802 F.2d 1367 (Fed. Cir. 1986); *See also Invitrogen Corp. v. Clontech Laboratories, Inc.*, 429

10   F.3d 1052, 1063 (Fed. Cir. 2005) (citing *Apotex USA, Inc. v. Merck & Co., Inc.*, 254 F.3d 1031,

11   1036 (Fed. Cir. 2001) (requiring the party asserting invalidity to prove by clear and convincing

12   evidence that the invention was not abandoned, suppressed, or concealed under § 102(g).)).  Because

13   this standard must be employed at the summary judgment stage just as it would be used at trial,

14   Defendants have the burden of showing that there is an undisputed record from which a finder of

15   fact would find by clear and convincing evidence that the '215 Patent and '603 Patent are invalid.

16   *Teton West Const. Inc. v. Two Rivers Const. Inc*., 961 F. Supp. 1422, 1426 (D. Idaho 1997).

**IV.    ANALYSIS**

   **A.    Summary of the Parties' Arguments**

19       A short summary of the parties' arguments is helpful in framing the issues now before

20   the Court.

      **1.    Defendants' Arguments**

22       In their motion, Defendants argue that both the '215 Patent and the '603 Patent are invalid on

23   grounds of abandonment.  Initially, as to the '215 Patent, Defendants insist that Plaintiffs abandoned

24   their '215 Application by: (1) failing to timely file the national fee that was due on January 10, 2000

25   under 35 U.S.C. § 371; (2) failing to timely file a response to the PTO's June 5, 2001 notice

26   reaffirming abandonment under 35 U.S.C. § 133; and (3) failing to make an adequate "showing" in

27   their Petition to Revive that their delays were "unavoidable," as specifically required under Sections

28   133 and 371.  Defendants' positions are based on the premise that the PTO improperly revived the

United States District Court

For the Northern District of California

'215 Application by failing to apply the "unavoidable" standard set forth in Sections 133 and 371, and instead applied a lower "unintentional" standard, which is not authorized by the pertinent statutory provisions.  Defendants insist that the PTO's actions in reviving the patent were thus "arbitrary, capricious, an abuse of discretion, [and] otherwise not in accordance with the law," 5 U.S.C. § 706(2)(A), and were "in excess of statutory ... authority," 5 U.S.C. § 706(2)(C), and therefore must be set aside.

Next, as to the '603 Patent, Defendants declare that it is similarly invalid because the '603 Application was filed in 2005 as a "continuation" of the '215 Application – more than one year after the '215 PCT Application was published in 1999.  Because the '603 Patent is based upon the abandoned '215 Application, Defendants aver that the '603 Patent is necessarily barred under 35 U.S.C. § 102(b).

### 2.    Plaintiffs' Arguments

In their opposition, Plaintiffs make four primary arguments.  First, they argue that the PTO had authority to accept the petition to revive the allegedly abandoned '215 Patent application under the "unintentional" prong of 37 C.F.R. § 1.137(b).  Second, they argue that Sections 371 and 133 address only the timing of patent applications and PTO responses, and do not independently provide grounds for invalidating an issued patent.  35 U.S.C. §§ 371 and 133.  In support of this argument, Plaintiffs accord significance to Sections 282(2)-(4), which specify the applicable invalidity defenses available to an accused infringer.  35 U.S.C. § 282(2)-(4).  Plaintiffs maintain that because neither Section 371 or Section 133 is a "condition for patentability" under Title 35, neither section may serve as a basis for invalidating the patents at issue.  Third, Plaintiffs argue that Section 41(a)(7) specifically empowers the PTO with the discretion to accept petitions to revive unintentionally abandoned patent applications.  35 U.S.C. § 41(a)(7).  Fourth, Plaintiffs insist that a number of factual disputes exist which preclude summary judgment.[10]

The Court now turns to the '215 Patent Application and the '603 Patent Application in order to determine whether Plaintiffs abandoned them.

### B.    The '215 Patent

---

[10]Plaintiffs also request time for additional discovery pursuant to Federal Rule of Civil Procedure 56(f).

United States District Court

For the Northern District of California

1    The relevant statutory landscape in deciding whether Plaintiffs abandoned the '215 Patent

2  Application is as follows.

3    Section 101 provides that "Whoever invents or discovers any new and useful process . . .

4  may obtain a patent therefore, *subject to the conditions and requirements of this title*."  35 U.S.C. §

5  101 (emphasis added).  In the pending motion, Defendants' abandonment argument focuses on

6  Plaintiffs' failure to satisfy two timing requirements taken from Title 35 – Section 371(d) and

7  Section 133.

8    Section 371, entitled, "National Stage: Commencement," provides that failure to timely file a

9  timely national fee "*shall* be regarded as abandonment of the application by the parties thereof,

10  unless it be shown to the satisfaction of the Director that such failure to comply was *unavoidable*."

11  35 U.S.C. § 371(d) (emphasis added).  Section 133, entitled, "Time for Prosecuting Application,"

12  provides that "failure of the applicant to prosecute the application within six months after any action

13  therein, of which notice has been given or mailed to the applicant . . . the application *shall* be

14  regarded as abandoned by the parties thereto, unless it be shown to the satisfaction of the Director

15  that such delay was *unavoidable*."  35 U.S.C. § 133 (emphasis added).  Accordingly, both of these

16  requirements prescribe the patentee to "show" that its delay was "*unavoidable*," otherwise the patent

17  application "*shall* be regarded as abandoned."

18
19
   **1.    Which Standard of Review Governs the Revival of the '215 Patent
        Application – "Unavoidable" or "Unintentional" Delay?**

20    Defendants insist that because Section 133 and Section 371 explicitly require a showing of

21  "unavoidable" rather than "unintentional" delay, it was improper for the PTO to revive the '215

22  Application on grounds of "unintentional" delay under 37 C.F.R. 1.137(b).[11]  Plaintiffs argue that the

23
24    [11]37 C.F.R. 1.137 provides, in relevant part,

25    (a) Unavoidable. If the delay in reply by applicant or patent owner was unavoidable, a petition may be filed
    pursuant to this paragraph to revive an abandoned application, a reexamination proceeding terminated
26    under §§ 1.550(d) or 1.957(b) or (c), or a lapsed patent. A grantable petition pursuant to this paragraph
    must be accompanied by:
27        (1) The reply required to the outstanding Office action or notice, unless previously filed;
        (2) The petition fee as set forth in § 1.17(l);
28        (3) A showing to the satisfaction of the Director that the entire delay in filing the required reply
        from the due date for the reply until the filing of a grantable petition pursuant to this paragraph

United States District Court

For the Northern District of California

1   PTO had authority to accept the petition to revive the allegedly abandoned '215 Patent application

2   under the "unintentional" prong of 37 C.F.R. § 1.137(b).  As further support for the existence of

3   PTO discretion in reviving patent applications, Plaintiffs contend that Section 41(a)(7) specifically

4   empowers the PTO with the discretion to revive "unintentionally" abandoned patent applications.

5          The Court will now address the plain meaning of the statutory text and the distinction

6   between the "unavoidable" and "unintentional" standards and the relevant legislative history and

7   evolution of the statutes at issue to determine the appropriate standard to apply to Plaintiffs' delay in

8   filing their national fee and their subsequent delay in filing their response to the PTO's notice

9   reaffirming abandonment.

10                        **a.      Plain Meaning**

11          Initially, the Court notes that "[s]tatutory interpretation begins with the plain meaning of the

12   statute's language, [and] [w]here the statutory language is clear and consistent with the statutory

13   scheme at issue, the plain language of the statute is conclusive and the judicial inquiry is at an end."

14   *Botosan v. Paul McNally Realty*, 216 F.3d 827, 831 (9th Cir. 2000) (citations omitted); *see also BP*

15   *Am. Prod. Co. v. Burton*, 127 S. Ct. 638, 643 (2006) ("Unless otherwise defined, statutory terms are

16   generally interpreted in accordance with their ordinary meaning.").  Only where a statute yields to

17   more than one reasonable interpretation, should a court turn to the statute's legislative history for

18

19   was unavoidable; and
          (4) Any terminal disclaimer (and fee as set forth in § 1.20(d)) required pursuant to paragraph (d)
20   of this section.

21   (b) Unintentional. If the delay in reply by applicant or patent owner was unintentional, a petition may be
     filed pursuant to this paragraph to revive an abandoned application, a reexamination proceeding terminated
22   under §§ 1.550(d) or 1.957(b) or (c), or a lapsed patent. A grantable petition pursuant to this paragraph
     must be accompanied by:
23          (1) The reply required to the outstanding Office action or notice, unless previously filed;
          (2) The petition fee as set forth in § 1.17(m);
24          (3) A statement that the entire delay in filing the required reply from the due date for the reply
     until the filing of a grantable petition pursuant to this paragraph was unintentional. The Director
25   may require additional information where there is a question whether the delay was unintentional;
     and
26          (4) Any terminal disclaimer (and fee as set forth in § 1.20(d)) required pursuant to paragraph (d)
     of this section.

27

28   37 C.F.R. 1.137(a), (b).

United States District Court

For the Northern District of California

1  evidence of congressional intent. *United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir. 1999); *see*

2  *also United States v. Gonzales*, 520 U.S. 1, 6 (1997) ("Given the straightforward statutory command,

3  there is no reason to resort to legislative history.").

4      Here, the plain language of Section 133 and 371(d) is clear and unambiguous. Both statutes

5  explicitly prescribe that a patent application "shall be regarded" as abandoned unless it can be shown

6  that the delay was "unavoidable." 35 U.S.C. §§ 133, 371(d). Neither section references an

7  "unintentional" standard. In turning to Congress's use of the terms, "unavoidable" and

8  "unintentional" delay, it is evident that Congress intended a distinction between the "unavoidable"

9  and "unintentional" standards. For example, Congress has explicitly identified the circumstances

10  under which it intends to authorize the PTO to revive an abandoned application for "unintentional"

11  and/or "unavoidable" failures. *See* 35 U.S.C. § 111(a)(4) and (b)(3)(C) (application abandoned for

12  failure to timely submit fees or oath unless delay was "unavoidable or unintentional"); 35 U.S.C. §

13  122(b)(2)(B)(iii) (application abandoned for failure to timely notify PTO of the filing of an

14  international application unless delay was "unintentional"); *Ray*, 55 F.3d at 608-609, n.1 (noting that

15  amendment to 35 U.S.C. § 41(c) authorized revival for "unintentional" delays, in addition to

16  "unavoidable" delays). Congress's deliberate use of, and distinction between, the terms,

17  "unintentional" and "unavoidable," within Title 35 is evidence that Congress has created different

18  standards in evaluating certain delays on the part of a patentee. Based on the express language of

19  the statutes at issue, the Court finds clear support on their face that the "unavoidable" standard

20  governs the review of delays under Section 133 and Section 371(d). Although the Court's inquiry

21  can end here, a review of the legislative history and evolution of Section 133 and Section 371(d)

22  provide further support for the Court's finding.

23              **b.    Legislative History of Sections 133 and 371**

24      The relevant legislative history and evolution of Section 133 and Section 371 indicates that

25  those sections contemplate application of the "unavoidable" standard, and not the "unintentional"

26  standard.

27      Turning to Section 133, the Court notes that the "unavoidable" standard "as it is contained in

28  35 U.S.C. § 133 has remained unchanged since first enacted in 1861." *Haines v. Quigg*, 673 F.

United States District Court

For the Northern District of California

1   Supp. 314, 316-17 (N.D. Ind. 1987). Despite opportunities to amend Section 133, Congress has

2   elected not to include an "unintentional" standard therein. For example, in 1982 Congress enacted

3   35 U.S.C. § 41(a)(7), which established the amount of certain statutory fees for revival of an

4   "unintentionally" abandoned patent application. *See* Pub. L. 97-247, § 3(a)-(e) (Aug. 27, 1982); 35

5   U.S.C. §41(a)(7). Despite the enactment of Section 41(a)(7) and subsequent amendments to that

6   section, Congress has not chosen to amend Section 133 to add an "unintentional" standard to the

7   existing "unavoidable" standard which governs review under Section 133. *Id.*; *see also* Pub. L. 106-

8   113 § 4732(a)(10)(A) (Nov. 29, 1999), as amended by Pub. L. 107-273, § 13206(b)(1)(B) (Nov. 2,

9   2002).

10         Next, turning to Section 371, the legislative history similarly reveals no Congressional intent

11   to import an "unintentional" standard therein. As originally enacted in 1975, Section 371 did not

12   provide any mechanism to excuse abandonment whatsoever. *See* Pub. L. 94-131 (Nov. 14, 1975).

13   In 1984, after the enactment of Section 41(a)(7) – which referenced the concept of "unintentional"

14   delay – Congress amended Section 371 to excuse abandonment, only if the delay was

15   "unavoidable." *See* Pub. L. 98-622 (Nov. 8, 1984). Thus, despite the opportunity to include or

16   otherwise reference an "unintentional" standard within Section 371, Congress has refrained from

17   doing so. Accordingly, Court finds additional support in the legislative history of the statutes at

18   issue that the "unavoidable" standard governs the review of delays under Section 133 and Section

19   371(d).[12]

20         For these reasons the Court finds that Section 133 and Section 371 contemplate the

21   application of the "unavoidable" standard only, and not the "unintentional" standard.

22

23   [12]Finally, turning to the apposite decisions, it is evident that courts have continued to adhere to the distinction
     between the "unavoidable" and "unintentional" standards. In determining whether a delay was "unavoidable," for purposes
     of abandonment analysis, one looks to whether the party exercised the due care of a reasonably prudent person. *Ray v.*
24   *Lehman*, 55 F.3d 606, 608-09 (Fed. Cir. 1995) (citing *Douglas v. Manbeck*, 21 U.S.P.Q. 2d 1697, 1700, 1991 WL 237823
     (E.D. Pa. 1991); *In re Mattullath*, 38 App. D.C. 497, 514-15 (D.C. Cir. 1912)). "Unintentional" conduct is not enough to
25   meet the stringent standard of "unavoidable delay." *Femspec, L.L.C. v. Dudas*, 2007 U.S. Lexis 8482, *26 (N.D. Cal. 2007);
     *See also Smith v. Mossinghoff*, 671 F. 2d 533 (D.C. Cir. 1982) (holding that where applicant's attorney missed deadline
26   because he was preoccupied with other legal matters and was in the process of moving his residence, applicant did not
     establish unavoidable delay); *Rydeen v. Quigg*, 748 F. Supp. 900 (D. D.C. 1990) (holding that failure to pay maintenance
27   fee because patentee's attorney had not received customary notice from PTO alerting him it was due was not sufficient to
     establish unavoidable delay because PTO has no duty to provide notice that maintenance fee is due). Consequently, it is clear
28   that federal courts have recognized that under Title 35 the "unavoidable" standard is distinct from the "unintentional"
     standard.

13

**United States District Court**
For the Northern District of California

### 2. Does Section 41(a)(7) Alter the Application of the Unavoidable Standard?

The Court now turns to Plaintiffs' contention that the 1982 enactment of Section 41(a)(7) empowered the PTO with discretion to accept petitions to revive an "unintentionally" abandoned patent application. Plaintiffs argue that Congress enacted Section 41(a)(7) as a "remedial" statute to provide the PTO with greater discretion in reviving abandoned patent applications. Plaintiffs insist that because Section 41 created two different filing fees for applications that had been either "unavoidably" or "unintentionally" abandoned, Congress necessarily afforded the PTO discretion to apply either the "unintentional" or "unavoidable" standard in evaluating requests to revive abandoned patent applications. Thus, according to Plaintiffs, the PTO's revival of the '215 Application is supported by Section 41(a)(7). Defendants disagree. Defendants posit that Section 41(a)(7) does not change the "unavoidable" standard explicitly set forth in Section 133 and Section 371. Defendants claim that Section 41(a)(7) is a fee statute – nothing more – and cannot override the clear Congressional intent and plain meaning of Section 133 and Section 371. The Court finds Plaintiffs' reliance on Section 41(a)(7) problematic.

Section 41 of the Patent Act is entitled, "Patent fees; patent and trademark search systems." 35 U.S.C. § 41. It does not state, or otherwise indicate, an intent to change or curtail the "unavoidable" standard set forth in Sections 133 and 371. To the contrary, Section 41(a)(7) explicitly refers to other sections of the Patent Act that are exclusively subject to the "unavoidable" standard – namely Section 133 and Section 151:

> On filing each petition for the revival of an unintentionally abandoned application for a patent, for the unintentionally delayed payment of the fee for issuing each patent, or for an unintentionally delayed response by the patent owner in any reexamination proceeding, $1,210, unless the petition is filed under *section 133 or 151* of this title, in which case the fee shall be $110.

35 U.S.C. § 41(a)(7) (emphasis added)[13]. Accordingly, the express language of Section 41(a)(7) recognizes the continuing existence of the "unavoidable" standard in the review of patent applications pursuant to Section 133, Section 151, and Section 122. Therefore, the Court finds that Section 41(a)(7) sets forth the amount of fees applicable for revival under the two possible standards

---

[13] Section 151 provides, in part, "If any payment required by this section is not timely made, but is submitted with the fee for delayed payment and the delay in payment is shown to have been *unavoidable*, it may be accepted by the Director as though no abandonment or lapse had ever occurred." 35 U.S.C. § 151 (emphasis added).

United States District Court

For the Northern District of California

1  ("unavoidable" and "unintentional"); however, it does not modify or alter Section 133 or Section

2  371, which expressly require "unavoidable" delays in order to revive abandoned applications.[14]

3      Notwithstanding the Court's reasoning above, at the hearing in this matter, Plaintiffs' counsel

4  argued that the decisions in *Enzo Therapeutics, Inc. v. Veda Research and Dev. Co. of the Weizmann*

5  *Inst. of Science*, 2007 U.S. Dist. Lexis 14831 (E.D. Va. Feb. 28, 2007) compels a different result

6  under Section 41(a)(7). However, *Enzo Therapeutics* is distinguishable from the current case on

7  multiple grounds. There, the patentee failed to timely respond to a three month-deadline *created by*

8  *the PTO* under its own regulations – specifically, 37 C.F.R. § 1.134. *Id.* at *5. Here, the Plaintiff

9  [patentee] failed to timely respond to a statutory requirement *created by Congress*. The Court

10  recognizes a significant distinction between procedural rules promulgated by the PTO on the one

11  hand, and statutory requirements promulgated by Congress on the other hand. Certainly, the PTO

12  would have more discretion to allow an exception to one its own regulatory standards than it would

13  to allow an exception to a statutory standard created by Congress. Plaintiffs have failed to provide

14  this Court with authority allowing it to depart from the applicable statutory standards of review set

15  forth in Sections 133 and 371.

16  _____

17  [14]The Court notes that Congress's amendments to other provisions in the Patent Act are further support for the
Court's conclusion that Section 371 provides for the application of the "unavoidable" standard exclusively. Most compelling

18  is that when Congress has amended other provisions to explicitly include an "unintentional" standard where it did not
previously exist, Congress did not make such inclusions within Section 371. The amendments to Section 111 are particularly
instructive here because Section 111 sets forth the initial requirements for a *U.S. patent application*, and Section 371 sets

19  forth the analogous initial requirements in the *PCT context*. Although Section 371 and Section 111 address similar subject
matter, the respective amendments of the sections is instructive on Congress's intent. The relevant amendments of Section

20  111 are as follows.

Before 1982, neither Section 111 nor Section 371 included a clause about forgiving a failure to comply under either

21  standard. As part of the same 1982 Amendments, which enacted Section 41(a)(7), discussed above, Congress revised Section
111 to excuse abandonment only if failure to comply was "unavoidable." *See* Pub. L. 97-247 (Aug. 27, 1982). This reveals

22  that the enactment Section 41(a)(7) was not intended to impose an unintentional standard, otherwise Congress would have
simultaneously included the "unintentional" language in Section 111 as well.

23  In 1984, Congress revised Section 371 to excuse abandonment only if the failure was "unavoidable." *See* Pub. L.
98-622 (Nov. 8, 1984). By implementing an "unavoidable" standard exclusively, this revision brought Section 371 in line

24  with Section 111. The 1984 amendment to Section 371 gave "international applicants benefits similar to those given national
applicants by P.L. 97-247 with respect to the time for filing the national fee and oath or declaration." *See* 130 Cong. Rec.
H. 10525 (Oct. 1, 1984). As of the 1984 amendment, Section 111 and Section 371 had equivalent standards for revival.

25  Subsequently, in 1994, Congress again amended Section 111, this time excusing abandonment where the failure to comply

26  was "unavoidable or unintentional." *See* Pub. L. 103-465, Title V, Subt. C, §532(b)(3) (Dec. 8, 1994). However, to date,
no such amendment was made to Section 371 and the "unintentional" standard has not been added to that provision.

27  Accordingly, the Court finds that in amending parallel statutes, Section 111 and 371, Congress's failure to amend
Section 371 to include the unintentional standard, allows an inference that Congress's intended revival under Section 371

28  to be governed by the "unavoidable" standard only. If Congress had truly intended for Section 371 or Section 133 to
encompass the "unintentional" standard, it would have amended them as it did with Section 111.

United States District Court

For the Northern District of California

1    Because *Enzo Therapeutics* involved a regulatory requirement rather than a statutory one,

2    and because the court's inquiry pertained to the "unintentional" standard, rather than the

3    "unavoidable" standard applicable here, the Court finds Plaintiffs' reliance on *Enzo Therapeutics*

4    unconvincing.

5                    **3.     Does Section 282 Preclude a Finding of Patent Invalidity?**

6           In opposing the current motion, Plaintiffs also rely on 35 U.S.C. § 282.  Plaintiffs maintain

7    that Sections 282(2)-(4) provide the exhaustive list of available invalidity defenses, and that

8    Defendants have not sufficiently shown that Congress intended Section 133 and/or Section 371 to be

9    included within that list.  Plaintiffs explain that the list of defenses includes, in relevant part,

10   "[i]nvalidity of the patent . . . in suit on any ground specified in part II of this title as a *condition for*

11   *patentability*" or "[a]ny other fact or act made a defense by this title."  35 U.S.C. §§ 282(2), (4)

12   (emphasis added).  Plaintiffs state that the two statutory provisions listed as "conditions for

13   patentability" are "novelty" and "non-obviousness," under 35 U.S.C. § 102 and § 103, respectively.

14   Because Congress did not similarly designate Section 133 or Section 371, as "condition[s] for

15   patentability," Plaintiffs contend that Defendants' invalidity arguments premised on Section 133 and

16   Section 371 necessarily fail.

17          Defendants reply that their motion for invalidity is authorized by Section 282 for four

18   reasons.  First, Defendants point out that they have moved to declare the '603 Patent invalid under

19   Section 102(b) – which is an available invalidity defense under Section 282(2) – and in order to

20   make that determination the Court must decide whether the prior '215 Application remains

21   abandoned under Section 133 and/or Section 371.  Thus, Defendants contend that the issue of

22   abandonment under Section 133 and/or Section 371 is inescapably tethered to the Court's invalidity

23   inquiry under Section 102(b).  Second, Defendants point out that they have moved to declare both

24   the '215 Patent and the '603 Patent  invalid under Section 102(c) – which is also an available

25   invalidity defense under Section 282(2).  Third, Defendants state that Section 282(2) is not limited to

26   the defenses found in Section 102 and Section 103, as Plaintiffs contend.  Defendants note that

27   Section 282(2) broadly authorizes them to assert as a defense the "[i]nvalidity of the patent . . . in

28   suit on any ground specified in part II of this title as a condition for patentability" and that part II

16

**United States District Court**
For the Northern District of California

1  includes the six-month deadline for prosecuting an application in Section 133 as a condition;

2  therefore, Section 133 is an available defense under Section 282(2).  Fourth, Defendants insist that

3  Section 133 and Section 371 are available invalidity defenses under Section 282(4) because they are

4  specifically incorporated therein ("[a]ny other fact or act made a defense by this title.") 35 U.S.C. §

5  282(4).

6       Having considered the parties' arguments, the Court finds Defendants' fourth argument most

7  persuasive for the reasons set forth below.  Section 282(4) clearly references "[a]ny other fact or act

8  made a defense by this title" as an invalidity defense that must be pleaded.  35 U.S.C. § 282(4).  A

9  fortiori, Section 282(4) must therefore incorporate Section 133 and 371(d).  This conclusion is

10  supported by a recent district court decision.  *New York Univ. v. Autodesk, Inc*., 466 F. Supp. 2d 563

11  (S.D.N.Y. 2006).  In *Autodesk*, the court implicitly rejected the same argument made by Plaintiff

12  here.  *Id*. at 565.  There, the court stated,

13       Plaintiff argues that the structure of § 282 of the patent statute provides a "specific

14  framework for challenging the validity of a patent in the context of an infringement action" that precludes judicial review of PTO decisions that revive abandoned

15  patents. . . . Section 282 lists three specific defenses that may be raised in an infringement action and also permits a defendant to raise "[a]ny other fact or act

16  made a defense by this title." Although improper revival would appear to be covered by this catch-all language, plaintiff argues that "improper revival" [under § 133] is

17  not explicitly "made a defense" under the patent statute, and so is not reviewable in this proceeding. The fact, however, that "improper revival" is not specifically listed

18  as a defense in § 282 does not provide clear and convincing evidence of legislative intention to preclude judicial review.

19  *Id*.; *See also Quantum Corp. v. Rodime, PLC*, 65 F.3d 1557, 1584 (Fed. Cir. 1995) (stating "Section

20  282 does not state that the list of invalidity defenses contained therein are the only ones available;

21  the statute merely says '[t]he following shall be defenses.'  The express words of Section 282

22  therefore allow for the existence of other invalidity defenses.")[15]  Similarly, in this case, the fact that

23  Section 133 and Section 371 are not specifically listed under Section 282, does not mean they are

24  not included in the catch-all provision of "[a]ny other fact or act made a defense by this title."  35

25

26      [15]At the hearing, and in supplemental briefing, Plaintiffs' counsel argued that the court's reasoning in *Quantum*

27  *Corp*. is inapposite to the current case.  Plaintiffs claim that because the invalidity defense in *Quantum Corp*. was premised on a reexamination that violated Section 305, the issue was "substantive."  Plaintiffs contend that Section 282 is limited to

28  only those types "substantive" defenses, and not to the "ministerial" issues in the current case.  However, Plaintiffs have failed to adduce any legal authority supporting their distinction between these two semantic categories.  For that reason, the Court is not persuaded that Section 282 should be read as imposing such a limitation.

United States District Court

For the Northern District of California

1   U.S.C. § 282(4).  Both Section 133 and Section 371 are other "defenses" within Title 35.

2   Accordingly, the Court finds that Section 282 does not preclude their application here.

3       The Court also finds Defendants' third argument, relying on Section 282(2), also to be well-

4   taken.  Section 282(2) *broadly* authorizes a party to assert as a defense the "[i]nvalidity of the patent

5   . . . in suit on any ground specified in *part II* of this title as a condition for patent ability."  35 U.S.C.

6   § 282(2) (emphasis added).  Because Section 133's six-month deadline for prosecuting an

7   application is specified within part II of Title 35, it necessarily provides an available defense where a

8   patentee has abandoned, and failed to lawfully revive, a patent application.  35 U.S.C. §§ 282, 133.[16]

9       For these reasons, the Court finds that Section 282 does not preclude Defendants' motion for

10  summary judgment under Section 133 and/or Section 371.  Having determined the applicability of

11  Section 133 and Section 371, the Court must now turn its attention to the whether it may review the

12  PTO's decision to revive the '215 Application under the "unintentional" standard set forth in 37

13  C.F.R. 1.137(b).

14          **4.      Administrative Procedure Act**

15      Without citing any legal authority, Plaintiffs assert in their brief that the PTO's granting of a

16  petition to revive is not subject to judicial review.  (Pls.' Opp. at 5:24-6:9.)  At the hearing on this

17  matter, Plaintiffs' counsel clarified that the Court may review the PTO's decision, but should give

18  deference to the PTO when doing so.

19      A PTO action is generally reviewable under the Administrative Procedure Act, 5 U.S.C. §§

20  701 *et seq*. ("APA"), and "may be set aside if it is 'arbitrary, capricious, an abuse of discretion, or

21  otherwise not in accordance with law.' " *Ray*, 55 F.3d at 608 (quoting 5 U.S.C. § 706(2)(A))[17].  The

22

23      [16]In addressing Defendants' second argument pertaining to Section 282, the Court notes that Defendants have failed
24  to adduce legal authority where a court has applied Section 102(c) as a bar in this factual context.  Section 102(c) provides:
    "A person shall be entitled to a patent unless . . . (c) he has abandoned the invention."  35 U.S.C. § 102(c).  Because the Court
25  has already determined, on other grounds, that Section 282 does not preclude the applicability of Section 133 or Section 371,
    it need not reach the merits of Defendants' second argument under Section 102(c).

26      [17]*See also Morganroth v. Quigg*, 885 F.2d 843, 848 (Fed. Cir. 1989) (holding that the Patent Office's interpretation
27  of statutory and regulatory provisions regarding abandonment and revival of patent applications is entitled to "considerable
    deference").  Accordingly, this court may "not [ ] substitute its own judgment for that of the agency."  *Ray*, 55 F.3d at 608.
28  Indeed, this court should only set aside decisions of the Patent Office if they "lack any basis in reason or common sense."
    *Smith v. Mossinghoff*, 671 F.2d 533, 538 (D.C. Cir. 1982).  At the same time, however, a court "should not supply a reasoned
    basis for the agency's action that the agency itself has not given."  *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mutual*

United States District Court

For the Northern District of California

APA confers a general cause of action upon persons "adversely affected or aggrieved by agency action within the meaning of a relevant statute," 5 U.S.C. § 702, but withdraws that cause of action to the extent the relevant statute "preclude[s] judicial review," 5 U.S.C. § 701(a)(1).  *Autodesk, Inc.*, 466 F. Supp. 2d 563 at 565.  Whether a statute precludes judicial review "is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved."  *Id*. (citing *Block v. Cmty. Nutrition Inst*., 467 U.S. 340, 345 (1984)).  There is a "general presumption favoring judicial review of administrative action," *id*. at 351, and this presumption is overcome only when there is "clear and convincing evidence of legislative intention to preclude review," *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 n. 4 (1986).  Here, the record before the Court evinces no basis upon which to find the existence of clear and convincing evidence of Congress's intent to preclude judicial review.  *See Autodesk, Inc*., 466 F. Supp. 2d 563 at 565 (finding same).

Plaintiffs also assert in their brief, without authority, that judicial review of the PTO's *denial* of a petition to revive is distinguishable from Defendants' invalidity theory which challenges the PTO's *grant* of a petition to revive.  To the contrary, courts have recognized that pursuant to the APA, an accused infringer may challenge the PTO's *grant* of a petition to revive as an invalidity defense in a later-filed action.  *See Arrow Int'l v. Spire Biomedical, Inc*., 443 F. Supp. 2d 182, 185 (D. Mass. 2006) (stating that if the patentee is successful on its petition to revive before the PTO, the alleged infringer may challenge the revival and argue its implications before a District Court in a subsequently refiled patent litigation.); *See also Autodesk, Inc*., 466 F. Supp. 2d 563, 564-65 (finding that court was empowered under ADA to review and set aside the PTO's granting of a petition to revive); *Lawman Armor Corp. v. Simon, No. 04-72260*, 2005 U.S. Dist. Lexis 10843 (E.D. Mich. Mar. 29, 2005) (same).  Because there is a general presumption favoring judicial review of administrative action, and because Plaintiff has failed to identify clear and convincing evidence of a legislative intention to preclude judicial review,  the Court finds that it may review the of the PTO's decision to revive the '215 Patent.

**5.      Did the PTO Abuse its Discretion in Reviving the '215 Application?**

*Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotations omitted).

United States District Court

For the Northern District of California

1    Having determined that the Court may review the PTO's decision to revive the '215

2    Application and that the proper standard was "unavoidable," and not "unintentional," the Court must

3    now decide whether there is undisputed and clear and convincing evidence to conclude that the PTO

4    abused its discretion in failing to applying the "unavoidable" standard and the related timing

5    requirements of Section 133 and Section 371.  In support of their motion, Defendants emphasize that

6    Plaintiffs' petition to revive the '215 Patent was substantively and procedurally flawed.

7    Substantively, Plaintiffs' petition was allegedly flawed because it provided no explanation for the

8    delay, as required by 37 C.F.R. 1.137, and instead stated in a conclusory fashion, that "[t]he entire

9    delay in filing the required reply until the filing of a grantable petition under 37 CFR 1.137(b) was

10   unintentional."  (JS at ¶ 19, Ex. 4.)[18]  Procedurally, Plaintiffs' petition was allegedly flawed because

11   it was not signed.  (*Id*.)  In opposition, Plaintiffs insist that significant deference should be given to

12   the PTO's interpretation of its own regulations and that the existence of material factual disputes

13   preclude summary judgment.

14   Under circumstances similar to the current case, a district court has found that the PTO's

15   revival of an abandoned application under 37 C.F.R. § 1.137 was an abuse of discretion under

16   Section 706(2)(A) of the APA, and therefore subject to being overturned.  *Field Hybrids, LLC v.*

17   *Toyota Motor Corp.*, 2005 U.S. Dist Lexis 1159 *22 (D. Minn. 2005).  In *Field Hybrids*, the plaintiff

18   patentee failed to respond to a PTO office action within the prescribed six-month period set forth in

19   Section 133.  *Id*. at *3.  The patentee subsequently filed a petition to revive the abandoned

20   application fifteen months later on grounds that the delay was "unintentional."  *Id*. at *5.  After

21   initially dismissing the patentee's first petition, the PTO subsequently granted the patentee's second

22   petition for revival on grounds that the patentee's delay was "unintentional."  *Id*.  In reviewing the

23   propriety of the PTO's decision, the district court found that the factual record did not support the

24   PTO's finding that the patentee's delay was unintentional.  *Id*. at *21.  To the contrary, the factual

25   record revealed that the patentee's delay in responding to the PTO was intentional because the

26

27   ───────────────

28   [18]Defendants contend that Plaintiffs' petition to revive fails under the "unintentional" standard also.  In particular, Defendants argue that because Plaintiffs simultaneously filed other documents (such as a "Second Preliminary Amendment" and a "Petition for Accelerated Examination Under MPEP 708.02 (VII)") that would have required extensive time to prepare, it cannot follow that the entire delay was "unintentional."  (Defs.' Mot. at 12:12-22.)

1    factual record demonstrated that the patentee and the patentee's attorney were aware of the pertinent

2    deadline.  *Id.* at \*21-23.

3         Here, the Court similarly finds that the PTO abused its discretion in reviving the '215

4    Application.  As described above, the applicable statutory requirements for the revival of an

5    application in these circumstances are set forth in Section 133 and Section 371(d).  As more fully set

6    forth below, a review of the undisputed factual record before the Court indicates that Plaintiffs failed

7    to comply with both sections.

8                              **a.      Section 371**

9         Turning to the national fee timing requirement of Section 371, the parties do not dispute that

10   the deadline for Plaintiff to file the national fee for the U.S. national stage of its PCT application at

11   the PTO was January 10, 2000.  (JS at ¶ 6.)  The parties also do not dispute that the PTO did not

12   receive Plaintiffs' national fee until January 11, 2000.  (*Id.* at ¶ 7.)  A subsequent revival of the

13   application therefore requires the patentee to "show to the satisfactory of the Director that such

14   failure to comply [with the deadline] was unavoidable."  35 U.S.C. § 371(d).  Here, Plaintiffs failed

15   to do that.  A review of Plaintiffs' July 22, 2002 Petition for Revival of the '215 Patent, shows that

16   Plaintiffs made no showing that their delay was "unavoidable" as required by Section 371(d).  (JS at

17   ¶ 18, Ex. 4.)  For these reasons, the Court finds there is undisputed and clear and convincing

18   evidence to find that the PTO's decision to revive the '215 Patent – without a showing to the

19   Director that the failure was unavoidable – was an abuse of discretion because the decision was "not

20   in accordance with law."  *Ray*, 55 F.3d at 608.

21                             **b.      Section 133**

22        Next, the Court turns to the applicable timing requirement of Section 133 mandating a

23   patentee to respond to the PTO within six-months after notice has been given.  The parties do not

24   dispute that the PTO issued a denial notice addressed to Plaintiffs' attorney of record dated June 5,

25   2001.  (*Id.* at 14.)  However, the parties do dispute whether Plaintiffs' attorney of record actually

26   received the PTO's denial notice.  (Pls.' Opp. at 11:25-12:16.)  If the PTO provided notice or

27   otherwise timely mailed the June 5, 2001 denial notice, then Plaintiffs' subsequent response on July

28   18, 2002 was untimely, thereby resulting in another basis for abandonment of the '215 Application,

United States District Court
For the Northern District of California

21

United States District Court

For the Northern District of California

unless the delay was "unavoidable." 35 U.S.C. § 133. If, however, the PTO did not provide notice, or otherwise timely mail the June 5, 2001 denial notice, then Plaintiffs would not have been on notice to respond until the next correspondence from the PTO to Plaintiffs' attorneys, which did not occur until January 23, 2002. (Sandoval Decl. Ex. D.) The January 23, 2002 facsimile bore the words "05 June 2001 Decision" and attached a copy of the PTO's June 5, 2001 denial notice. (*Id.*) If Plaintiffs did not receive the PTO's June 5, 2001 decision until January 23, 2002 – as Plaintiffs contend is a possibility – then Plaintiffs July 18, 2002 Petition to Revive the '215 Patent would appear timely under 35 U.S.C. § 133. (Pls.' Opp. at 4:2-6.)

In examining the factual record, it is undisputed that the PTO reaffirmed the abandonment of the '215 Application in the June 5, 2001 denial notice addressed to Plaintiffs' attorney of record, Mr. Islam. (*Id.* at ¶ 14, Ex. 3.) Because it is presumed that a notice by a government agency is mailed on the date show, *Molnar v. Legal Sea Foods, Inc.*, 473 F. Supp. 2d 428, 430 (S.D.N.Y. 2007) (citing *Sherlock v. Montefiore Medical Ctr.*, 84 F.3d 522, 525 (2d Cir. 1996)[19]), and because there is a rebuttable presumption that the document has been received by the addressee, *Schikore v. BankAmerica Supplemental Retirement Plan*, 269 F.3d 956, 961 (9th Cir. 2001) (citations omitted), the Court must presume that the PTO sent, and Plaintiff received, the June 5, 2001 denial notice at that time.

In response, Plaintiffs do not offer any competent evidence in an effort to rebut the presumption of receipt of the denial notice. Plaintiffs do not offer a declaration from their *own patent counsel*, Mr. Islam or Mr. Mosoff, indicating they did not receive the denial notice. Instead, Plaintiffs provide the Court with a single declaration containing speculation only. (Blanch Decl. at ¶ 2-5) (stating "Aristocrat hopes to establish through the testimony of Mr. [ ] Islam and/or [Mr.] [ ] Mosoff that they had not received the Patent Office's June, 2001 Decision on Petition until January 23, 2002, thereby eliminating the allegedly unexcused six month period of alleged delay." . . . "Based on the existence of Exhibit D to the Sandoval Declaration (the January 23, 2002 facsimile from Anthony Smith of the Patent Office to [Mr.] Mosoff), it is believed that the facts sought exist.")

---

[19]There is a further presumption that a mailed document is received three days after the date on which it is sent. *See* Fed. R. Civ. P. 6(e); *Sherlock*, 84 F.3d at 525.

1    However, contrary to Plaintiffs' speculation, the existence of the January 23, 2002 facsimile does

2    not have any tendency to prove that the PTO failed to previously provide the June 5, 2001 denial

3    notice to Plaintiff.  The January 23, 2002 facsimile only tends to prove that the June 5, 2001 denial

4    notice was transmitted to Plaintiffs' counsel a second time.  Without competent evidence indicating

5    otherwise, the Court must conclude that the June 5, 2001 denial notice was timely mailed and

6    received.  Plaintiffs' speculation that the June 5, 2001 notice might not have been received, without

7    more, is not sufficient to rebut the applicable presumptions of mailing and receipt.  For these

8    reasons, the Court finds there is undisputed and clear and convincing evidence to find that the PTO's

9    decision to revive the '215 Patent – without a showing to the Director that the failure was

10   unavoidable – was an abuse of discretion because the PTO's decision was "not in accordance with

11   law."  *Ray*, 55 F.3d at 608.

12        Having failed to establish a triable issue of material fact, Plaintiffs rely on the existence of

13   the January 23, 2002 facsimile as a basis for a Rule 56(f) request, contending that future depositions

14   of Plaintiffs' attorneys, Mr. Islam and Mr. Mosoff, are necessary to resolve the factual question of

15   when Plaintiffs actually received the June 5, 2001 denial notice.  Plaintiffs aver that this possible

16   factual dispute precludes a grant of summary judgment.

17        The Court finds Plaintiffs' request under Rule 56(f) to be problematic on two fronts.  First,

18   the Court has already determined that Plaintiffs' failure to comply with Section 371(d) resulted in

19   abandonment of the '215 Application.  In their opposition, Plaintiffs do not identify any factual

20   disputes pertaining to their failure to pay the national fee and the resulting abandonment under

21   Section 371(d).  Neither do Plaintiffs identify any facts from which this Court could find that they

22   made a showing of "unavoidable" delay to the PTO regarding the filing of their national fee.

23   Accordingly, even if there were a disputed issue of fact surrounding Plaintiffs' receipt of the June 5,

24   2001 denial notice, it would not preclude a grant of summary judgment under Section 371(d).

25        Second, Plaintiffs' reliance on Rule 56(f) is procedurally deficient.  Rule 56, provides that a

26   Court may allow a party to obtain additional discovery where it "appear[s] from the affidavits . . .

27   that the party cannot for reasons stated present by affidavit facts essential to justify the party's

28   opposition."  Fed. R. Civ. Proc. 56(f).  "The burden is on the party seeking additional discovery to

United States District Court

For the Northern District of California

1   proffer sufficient facts to show that the evidence sought exists . . . and that it would prevent

2   summary judgment." *Nidds v. Schindler Elevator Corp*., 113 F.3d 912, 920 (9th Cir. 1996).  To

3   obtain postponement or denial for further discovery, the opposing party's declaration must show the

4   following: (1) facts establishing a likelihood that controverting evidence may exist as to a material

5   fact; (2) the specific reasons why such evidence cannot be presented at the present time; and (3) the

6   steps or procedures which the opposing party intends to utilize to obtain such evidence.  Hon.

7   William W. Schwarzer, *supra*, § 14:114 (citing Fed. R. Civ. P. 56(f); *Kelly v. Marcantonio*,187 F.3d

8   192, 203 (1st Cir. 1999); *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991)). The opposing

9   party must also explain how additional time will enable him or her to rebut the movant's allegations

10   of no genuine issue of material fact.  *Id*. (citing *Tatum v. City & County of San Francisco*, 441 F.3d

11   1090, 1101 (9th Cir. 2006); *Trask v. Franco*, 446 F.3d 1036, 1042 (10th Cir. 2006); *Stearns Airport

12   Equip. Co., Inc. v. FMC Corp*., 170 F.3d 518, 535 (5th Cir. 1999)).  Plaintiffs' affidavit fails to make

13   the necessary showing.  As set forth above, the Court notes that the existence of the January 23,

14   2002 facsimile does not, by itself, have any tendency to prove that the PTO failed to previously

15   provide the June 5, 2001 denial notice to Plaintiff.  Additionally, Plaintiffs' affidavit is insufficient

16   because it contains only speculation as to when its counsel may have received the June 5, 2001

17   denial notice.  Such speculation is inadequate to raise a genuine issue of material fact.  Likewise,

18   Plaintiffs' affidavit does not present facts establishing the likelihood that the evidence sought

19   actually exists.  Plaintiffs' affidavit also fails to explain why they could not present declarations

20   from their *own patent counsel* –  Mr. Islam and/or Mr. Mosoff – who are the alleged holders of the

21   allegedly existing evidence.

22       In conclusion, the Court finds that there is undisputed clear and convincing evidence on this

23   record to conclude that the PTO abused its discretion in failing to applying the "unavoidable"

24   standard and the related timing requirements of Section 133 and Section 371(d).  Accordingly,

25   Plaintiffs abandoned the '215 Application, and did not lawfully revive it, because they failed to meet

26   the "unavoidable" standard and the related timing requirements of Section 133 and Section 371(d).

27   The Court now addresses the resulting impact on the validity of the '603 Patent.

28       **C.     The '603 Patent**

United States District Court

For the Northern District of California

1    Defendants argue that because the '603 Patent purports to be a "continuation" of the '215

2   Application, it would normally be entitled to the '215 Application's filing date under 35 U.S.C. §

3   120.  However, that is not true if the abandoned '215 Application was never lawfully revived.  On

4   that basis, Defendants contend that because the '215 Application was abandoned, and not lawfully

5   revived, years before the '603 Application was filed, the '603 Patent is not entitled to the filing date

6   of the '215 Application.  Accordingly, Defendants insist that the '603 Patent is necessarily invalid

7   under Section 102(b) because "the invention was . . . described in printed publication in this or a

8   foreign county . . . more than one year prior to the date of the application for patent in the United

9   States." 35 U.S.C. § 102(b).  Plaintiffs do not substantively respond to Defendants' argument.

10    If a given application qualifies as a continuation, continuation-in-part, or divisional

11   application, it may be entitled to the effective filing date of a prior application under Section 120.  35

12   U.S.C. § 120.  Section 120 requires that the two applications be "co-pendent."  *Baxter Int'l, Inc. v.*

13   *McCaw, Inc*. 149 F.3d 1321, 1333 (Fed. Cir. 1998).  Specifically, in order for a continuation patent

14   application to benefit from an earlier patent's effective filing date, the continuation patent

15   application must be filed before abandonment of the first patent application.  35 U.S.C. § 120.  In

16   such a case, the filing date of the prior application is the measure for statutory bars under Section

17   102(b).  Chisum, *supra*, at § 6.02[9] (citing *Li Second Family Limited Partnership v. Toshiba Corp*.,

18   231 F.3d 1373, 1379-80 (Fed. Cir. 2000))..

19    Section 102(b), provides that "a person shall be entitled to a patent unless . . . (b) the

20   invention was patented or described in a printed publication in this or a foreign country or in public

21   use or on sale in this country, more than one year prior to the date of the application for patent in the

22   United States." 35 U.S.C. § 102(b).  A person who invents a product or process that meets the

23   conditions of patentability (statutory subject matter, novelty, utility, nonobviousness) is under no

24   categorical duty to file an application for the patent within any certain period of time, but, once one

25   of the events described in Section 102 occurs (patenting, publication, public use or sale in this

26   country), whether by the inventor's action or the action of others, he or she must apply for a patent

27   within the prescribed period or be barred from obtaining a patent.  Chisum, *supra,* at § 6.02

28

United States District Court

For the Northern District of California

1   (citations omitted.).  Courts refer to the date one year[20] before the effective application filing date as

2   the "critical date."  *Id*.  The statutory bars in Section 102(b) apply when they occur "more than one

3   year prior to the date of the application for patent in the United States."  35 U.S.C. § 102(b).

4          Here, because the '215 Application was not properly revived, its abandonment date

5   was either January 10, 2000 or December 5, 2001, under Section 371(b) and Section 133,

6   respectively.  The next correspondence in the chain resulting in the '215 and '603 Patents was

7   Plaintiffs' "Petition For Revival Of An Application [sic] For Patent Abandoned Unintentionally

8   Under 37 C.F.R. 1.137(b)" filed on July 18, 2002.  (*Id*. at ¶¶ 17-18.)  The '603 Application was not

9   filed until April 8, 2005.  (*Id*. at ¶ 28.)  Thus, under either abandonment date, there exists a gap

10  between the '215 and '603 Applications, there exists no co-pendency between the applications under

11  Section 120, and the '603 Application cannot claim the effective filing date of the '215 Application.

12  Accordingly, the '603 Patent is necessarily invalid because it was described in the published '215

13  PCT Application more than one year prior to its date of application.  *See Field Hybrids*, 2005 U.S.

14  Dist. Lexis at *23.

15  **V.        CONCLUSION**

16         For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment

17  and finds that Defendants have shown, by clear and convincing evidence, that both patents in suit are

18  invalid because the '215 Application was abandoned, and not lawfully revived.

19

20  **IT IS SO ORDERED.**

21

22

23  Dated: June 13, 2007                                          _Martin J. Jenkins_

24                                                                MARTIN J. JENKINS

                                                                  UNITED STATES DISTRICT JUDGE

25

26

27         [20]In computing the one-year period, the general rule excluding the day the event occurs applies. Furthermore, 35

28  U.S.C. Section 21 provides that "[w]hen the ... last day for taking any action ... in the United States Patent Office falls on
    Saturday, Sunday, or a holiday within the District of Columbia, the action may be taken, or the fee paid, on the next
    succeeding secular or business day."