**E-FILED on** 5/13/10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ARISTOCRAT TECHNOLOGIES, AUSTRALIA PTY LIMITED and ARISTOCRAT TECHNOLOGIES, INC., <br><br>Plaintiffs, <br><br>v. <br><br>INTERNATIONAL GAME TECHNOLOGY and IGT, <br><br>Defendants. | No. C-06-03717 RMW <br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT BASED ON *MUNIAUCTION* <br><br>[Re Docket No. 443] |

Defendants International Game Technology and IGT (collectively "IGT") move for summary judgment of non-infringement under the Federal Circuit's decision in *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008). For the reasons set forth below, the court grants the motion.

## I. BACKGROUND

Aristocrat Technologies, et al. (collectively "Aristocrat"), the patentee, and IGT are competitors in the market for electronic gaming machines. On June 12, 2006, Aristocrat filed suit alleging infringement of United States Patent No. 7,056,215 ("'215 Patent"). When United States Patent No. 7,108,603 ("'603 Patent") issued, Aristocrat added this patent to the suit. The relevant

factual background is set forth in this court's May 14, 2009 claim construction order.  Dkt. No. 498 at 2-3.  Generally speaking, the patents describe an innovation in electronic gaming machines in which the use of a second bonus game allows greater flexibility in game type as well as increased operator control over jackpot payouts.

Claim 1 of the '215 Patent is reproduced below, with the main steps highlighted in bold:

> In a network of gaming machines, each of said gaming machines having a user interface activatable by a player to affect game display, each of said gaming machines being capable of accepting different wager amounts made by the player, a method of randomly awarding one progressive prize from a plurality of progressive prizes using a second game to select said one progressive prize, a display of said second game being triggered upon an occurrence of a random trigger condition having a probability of occurrence related to the amount of the wager, comprising:
>
> > **making a wager** at a particular gaming machine in the network of gaming machines;
> >
> > **initiating a first main game** at said particular gaming machine;
> >
> > **causing a second game trigger condition to occur** as a result of said first main game being initiated, said second game trigger condition occurring randomly and having a probability of occurrence dependent on the amount of the wager made at said particular gaming machine, said step of causing the second game trigger condition including:
> >
> > > (1) selecting a random number from a predetermined range of numbers;
> > >
> > > (2) allotting a plurality of numbers from the predetermined range of numbers in proportion to the amount of the wager made at said particular gaming machine, said step of allotting including allotting one number for each unit of currency of the amount wagered; and
> > >
> > > (3) indicating the occurrence of the second game trigger condition if one of the allotted numbers matches the selected random number;
> >
> > **triggering a second game to appear** at said particular gaming machine in response to said occurrence of said second game trigger condition, said second game appearing after completion of said first main game;
> >
> > **randomly selecting said one progressive prize** from said plurality of progressive prizes that has been won;
> >
> > **displaying said second game** to the player at said particular gaming machine in response to said triggering;
> >
> > **activating said user interface** at said particular gaming machine by said player during said displaying of said second game to affect the display of said second game;
> >
> > **identifying to the player said one progressive prize** from said plurality of progressive prizes that has been won; and
> >
> > **awarding said one progressive prize** from said plurality of progressive prizes that has been won.

'215 Patent 8:45-9:25.

## II. ANALYSIS

"[D]irect infringement requires a single party to perform every step of a claimed method."[1] *Muniauction v. Thomson*, 532 F.3d 1318, 1329 (Fed. Cir. 2008) (citing *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1380 (Fed. Cir. 2007)). If more than one party is required to perform the steps of the claimed method, there can be no infringement unless "one party exercises 'control or direction' over the entire process such that every step is attributable to the controlling party." *Id.* The requisite level of control or direction over the acts committed by a third party is met when "the law would traditionally hold the accused direct infringer vicariously liable for the acts committed by another party." *Id.* at 1330.

IGT moves for summary judgment on the basis that the asserted claims all require multiple actors, and IGT does not exercise sufficient direction or control over all the actors to infringe.

### A.  '215 Patent

The '215 Patent claims a "method of randomly awarding one progressive prize from a plurality of progressive prizes" comprising the following steps: (1) making a wager, (2) initiating a first main game, (3) causing a second game trigger condition to occur, (4) triggering a second game to appear, (5) randomly selecting one progressive prize, (6) displaying a second game, (7) activating a user interface, (8) identifying the progressive prize won, and (9) awarding the progressive prize won.[2] *See* '215 Patent 8:45-10:39. It is undisputed that the "activating user interface" step is performed by the player, not by the gaming machine. *See* Dkt. 524 at 19. Aristocrat contends that the remaining steps of the claimed method are performed by the gaming machine. *Id.* IGT argues that some of the remaining steps are performed by the gaming machine or casino, but others must be performed by the player. Regardless, because the parties agree that at least one step must be performed by the player, and at least one step must be performed by the gaming machine, the standard for joint infringement by multiple parties of a single claim articulated in *Muniauction* and

---

[1] This requirement must also be met for indirect infringement because "[i]ndirect infringement requires, as a predicate, a finding that some party amongst the accused actors has committed the entire act of direct infringement." *BMC Resources*, 498 F.3d at 1379.

[2] The '215 Patent has five claims, but each requires the nine steps listed.

United States District Court
For the Northern District of California

*BMC Resources* comes into play.[3] Thus, IGT cannot be liable for infringement of the '215 Patent unless it exercises control or direction over the player's performance of the "activating user interface" step, such that the law would hold IGT vicariously liable for the player's action. *See Muniauction*, 532 F.3d at 1330 (concluding noninfringement as a matter of law where defendant did not perform every step of the claimed method, and plaintiff failed to identify any legal theory under which defendant might be vicariously liable for the actions of third parties).

Aristocrat argues that IGT controls or directs the behavior of players by providing free credits to players to induce them to gamble at IGT's machines. While providing players with free credits might encourage some people to gamble at IGT's machines, players are not obligated to use their free credits, nor are players acting on behalf of IGT when they use their free credits on IGT's machines. The court cannot discern any legal theory under which IGT is vicariously liable for players' actions as a general matter. Thus, IGT does not exercise sufficient direction or control over players' conduct for their acts to be attributable to IGT.

Aristocrat also asserts that IGT infringes the claimed method during its testing of gaming machines. Since IGT operates the gaming machines, and its employees act as players during testing, Aristocrat argues that IGT performs every step of the claimed method during testing of its gaming machines. In response, IGT contends that infringement does not occur during testing because when IGT tests its machines, various steps of the claimed method are not performed, including: (1) making a wager, (2) engaging in a gambling activity, and (3) awarding a prize. For infringement to occur, IGT must perform every step of the claimed method. *Muniauction*, 532 F.3d at 1329 (citing *BMC Resources*, 498 F.3d at 1380). The court therefore considers whether these steps are performed during IGT's testing of gaming machines.

---

[3] Aristocrat's argument to the contrary is hard to understand. It claims that there is only one actor – the player, yet at the same time it concedes that the gaming machine – not the player – performs various steps of the claimed method. Dkt. No. 524 at 20-21. Unless the actions of both the player and the gaming machine can be attributed to the same party (i.e. where a single entity directs or controls the actions of both, such as in the testing situation, which is discussed in further detail), it is clear that more than one party is involved in performing the steps of the claimed method.

### 1. "Awarding Prize" Step

IGT argues that the "awarding prize" step requires a transfer of legal rights to the prize to the player. Aristocrat contends that simply displaying the amount of the prize won, without a concomitant transfer of entitlement to the prize, suffices to satisfy the "awarding prize" step. Aristocrat's construction is problematic for two reasons. First, this interpretation is contrary to the ordinary and customary meaning of the word "award." "[W]ords in a claim are generally given their ordinary and customary meaning." *Vitrionics Corp. v. Conceptronic*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). There does not appear to be any evidence in the specification or prosecution history suggesting that the inventor meant to use the term "award" in a manner inconsistent with its ordinary meaning, and Aristocrat seems to agree that "award," as used in the patent, has its ordinary and customary meaning. To award a prize is ordinarily understood to mean to confer rights to a prize, not simply to display for viewing the amount of the prize won, and the dictionary definitions cited by Aristocrat corroborate this understanding. *See* Dkt. No. 462-1 at 2 (defining "award" as "to grant as legally due").

Second, Aristocrat's proposed construction is contrary to the claim language. The '215 Patent claims a method that includes both of the following two steps: (1) "identifying to the player said one progressive prize from said plurality of progressive prizes that has been won" and (2) "awarding said one progressive prize from said plurality of progressive prizes that has been won." '215 Patent 9:21-25, 10:26-30. In light of this claim language, the "awarding prize" step cannot be met simply by displaying the amount of the prize won, as this would render the "identifying prize" step superfluous. Aristocrat attempts to differentiate between these two steps by contending that the "identifying prize" step indicates to the player that some prize has been won without displaying the monetary amount of the prize, while the "awarding prize" step displays the monetary amount of the prize. This interpretation lacks support in the patent and is contrary to the ordinary and customary meaning of "award." Because a "claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so," *Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc.*, 359 F.3d 1364, 1372 (Fed. Cir. 2005), the court finds that the "awarding prize" step requires more than displaying the amount of the prize won.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT BASED ON MUNIAUCTION   —No. C-06-03717 RMW
CCL                                                                 5

It is undisputed that during the testing of gaming machines, legal entitlement to a prize is never conferred upon IGT employees. Since the step of "awarding said one progressive prize from said plurality of progressive prizes that has been won" is not performed during testing, IGT does not perform all of the steps of the claimed method during testing, as required for a finding of infringement. Consequently, the court grants IGT's motion for summary judgment of non-infringement with respect to the '215 Patent.

### B.   '603 Patent

The '603 Patent is a continuation of the '215 Patent. The primary difference between the two patents is, unlike the method claimed in the '215 Patent, the method claimed in the '603 Patent does not contain the "activating user interface" step. The '603 Patent claims a "method of randomly awarding one progressive prize from a plurality of progressive prizes" comprising of the following steps: (1) making a wager, (2) initiating a first main game, (3) causing a second game trigger condition to occur, (4) triggering a second game to appear, (5) randomly selecting one progressive prize, (6) displaying a second game, (7) identifying the progressive prize won, and (8) awarding the progressive prize won. *See* '603 Patent 8:8-46.

Whereas the parties agreed that the "activating user interface step" in the '215 Patent had to be performed by the player, the parties dispute whether any of the steps in the '603 Patent must be performed by the player. IGT argues that the "making a wager" and "initiating first main game" steps must be performed by the player, while the remaining steps must be performed by the gaming machine and the casino. Aristocrat contends that every step of the claimed method may be performed by the gaming machine.

#### 1.   "Making a Wager" Step

The parties agree that the meaning of "making a wager" is the same in both the '215 Patent and the '603 Patent. IGT essentially contends that "making a wager" means betting, which is performed by the player. Aristocrat argues that "making a wager" means processing a bet, which is performed by the gaming machine when it transfers credits from the credit meter to the bet meter.

"It is well-settled, that in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification and, if in

evidence, the prosecution history." *Vitrionics*, 90 F.3d at 1582. "Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language." *Id.*

The court thus begins by examining the words of the claims themselves. The claim language in both patents provide support for IGT's proposed construction. The claims describes a network of gaming machines, "each of said gaming machines being capable of accepting different *wager amounts made by a player*."[4] '603 Patent 8:9-10 (emphasis added); *see also* '215 Patent 8:48-49, 9:29-30. This claim language indicates that gaming machines *accept* wagers, while players *make* wagers. Aristocrat makes much ado about the fact that the preamble refers to the player making different "wager amounts" as opposed to simply making "wagers." Viewed in context, the word "amounts" is necessary in the preamble to make clear that the gaming machines are able to accept wagers of differing amounts. This characteristic is important because the claimed invention improved upon the prior art (which gave players the same likelihood of achieving a jackpot regardless of whether they were betting a single token per line or multiple tokens per line) by making the probability of winning proportional to the amount of the wager made. *See* '603 Patent 1:46-52, 8:29-32. The court fails to see how this changes the clear implication that it is the player making the wager, whatever the amount, and the gaming machine accepting the wager.

The '215 Patent also contains the following dependent claim: "The method of claim 2 wherein said step of *making a wager includes betting a plurality of credits*, and wherein said step of allotting includes allotting one number for each credit bet."[5] '215 Patent 10:33-36. This claim language, which makes clear that "making a wager" is satisfied by "betting a plurality of credits," strongly supports IGT's contention that "making a wager" refers to the player's act of betting, not to the gaming machine's act of processing a bet.

---

[4] Though this language is in the preamble, it is essential to consider the preamble when construing terms used in both the preamble and the rest of the claim to ensure "one unified and internally consistent recitation of the claimed invention." *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1306 (Fed. Cir. 1999).

[5] The '603 Patent contains similar language in a dependent claim as well: "The method of claim 1, wherein said step of making a wager includes boning a plurality of credits, and wherein said step of allotting includes allotting one number for each credit bet." '603 Patent 8:51-54.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT BASED ON MUNIAUCTION —No. C-06-03717 RMW
CCL                                   7

Aristocrat asserts that the prosecution history of the '215 Patent supports its proposed construction. Aristocrat originally drafted the first step in the claimed method using the following language: "allowing the player to bet a plurality of credits for a single play at a gaming machine in the bank of gaming machines." Dkt. No. 463-10 at 2. After its claims were rejected by the patent examiner, Aristocrat made various amendments to the claim language. One of these amendments was replacing the earlier language describing the first step with: "making a wager at a particular gaming machine in the network of gaming machines." *Id.* According to Aristocrat, having the player perform the step of making a wager (as opposed to having the gaming machine perform the step of allowing the player to bet) would not have helped to distinguish the claimed method from the prior art, and therefore, the court should interpret the new "making a wager" language as having the same meaning as the original "allowing the player to bet" language. In the absence of any information in the public record suggesting the purpose for this amendment, the court finds this prosecution history ambiguous and unhelpful. If anything, the fact that Aristocrat chose to amend the claim language in the face of earlier rejections suggests that it sought to change the scope of what it claimed rather than to keep it the same. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 33 (1997) (holding that where there is no established reason for amendment, courts are to presume amendment was for the purpose of patentability). Moreover, the original claim language demonstrates that Aristocrat knew how to draft its claims in a way that clearly indicated to the public that the actor performing the first step was the gaming machine rather than the player, yet it chose not to draft its final claims in this way.

Though courts are to look first to intrinsic evidence, they may also consider expert testimony in construing claims. "However, conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005). In addition, because extrinsic evidence, including expert testimony, is generally less reliable than intrinsic evidence, courts should discount any expert testimony that clearly contradicts the claim construction mandated by intrinsic evidence. *Id.*

Aristocrat offers a declaration by Dwight Crevelt, an expert in the gaming industry, that "making a wager," as understood by a person of skill in the art, means "the transfer of credits from

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT BASED ON MUNIAUCTION —No. C-06-03717 RMW
CCL                                                              8

the credit meter to the bet meter by the game software." Dkt. No. 520 ("Crevelt Decl.") ¶ 6. Because conclusory statements regarding how a claim term should be construed are not helpful to the court, *Phillips*, 415 F.3d at 1318, the court examines the basis for Crevelt's assertion. Crevelt explains that microprocessors have been used to control gaming machines since the early 1980s, and whenever a bet is placed, microprocessors must carry out a sequence of programming steps, in particular, the step of transferring credits from the credit meter to the bet meter. Crevelt Decl. ¶¶ 6, 11. Since microprocessor involvement is required to process a bet, Crevelt concludes that "making a wager" necessarily refers to the procedure by which microprocessors transfer credits from the credit meter to the bet meter. *See id.* at ¶ 6 ("IGT's proposed construction, in effect, would divest the gaming machine of any function related to processing a wager amount.").[6] This reasoning, however, begs the question since it assumes that "making a wager" means processing a bet. If "making a wager" refers to processing a bet, one may infer that "making a wager" describes this microprocessor step. On the other hand, if "making a wager" refers to the act of betting, then it would describe an act by the player rather than the microprocessor.

  Both the '215 Patent and the '603 Patent use the transition "comprising," which is "well understood in patent law to mean 'including but not limited to.'" *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1319 (Fed. Cir. 2009) (quoting *CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1360 (Fed. Cir. 2007)). When a patent uses the term "comprising," the method claim "is open-ended and allows for additional steps." *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364, 1368 (Fed. Cir. 2003). In other words, the method claimed in the patents-in-suit covers all processes that include all of the enumerated steps, regardless of whether they involve additional steps not described in the claim. Consequently, even if a microprocessor must transfer credits from the credit meter to the bet meter as a required step of the betting process, the enumerated steps in the claim need not encompass this processing act.

---

[6] Aristocrat makes the same argument in its briefs. *See* Dkt. No. 524 at 7 ("Because IGT's proposed construction of 'making a wager' has no role for the computer, it cannot be correct.").

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT BASED ON MUNIAUCTION   —No. C-06-03717 RMW
CCL           9

United States District Court
For the Northern District of California

The court notes that, up until IGT brought its motion for summary judgment based on *Muniauction*, Aristocrat also interpreted "making a wager" as an act performed by the player, rather than the processing performed by the gaming machine. In its preliminary infringement contentions, Aristocrat contended that the "making a wager" limitation was met because "[i]n all of the accused IGT games, *a player* can make a wager at a particular gaming machine." Dkt. No. 445-5 at 5; *see also* Dkt. No. 445-4 at 4, 7. While not dispositive, this at least suggests that "making a wager," under its ordinary and customary meaning, refers to an act performed by the player.

Having considered both the intrinsic evidence and the extrinsic evidence offered by the parties, the court construes "making a wager" to mean betting, which is an act performed by the player. Because the parties agree that at least some of the remaining steps in the method claim are performed by the gaming machine, the standard for joint infringement by multiple parties of a single claim articulated in *Muniauction* and *BMC Resources* comes into play. IGT cannot be liable for infringement of the '603 Patent unless it exercises control or direction over the player's performance of the "making a wager" step, such that the law would hold IGT vicariously liable for the player's action. *See Muniauction*, 532 F.3d at 1330. As discussed above, the court rejects Aristocrat's argument that IGT controls or directs the behavior of players by providing free credits to induce gambling at IGT's machines. In addition, because the "awarding prize" step is not performed when IGT employees test gaming machines, IGT does not perform all of the steps of the claimed method during testing, as required for a finding of infringement.[7] Consequently, the court grants IGT's motion for summary judgment of non-infringement with respect to the '603 Patent.

### III. ORDER

For the foregoing reasons, the court grants IGT's motion for summary judgment.

DATED:     5/13/10

RONALD M. WHYTE
United States District Judge

---

[7] The inventors could have structured their claims to capture infringement by a single party, but they did not. *See BMC Resources*, 498 F.3d at 1381; Mark A. Lemley et al., *Divided Infringement Claims*, 33 AIPLA Q.J. 255, 272-75 (2005).

**United States District Court**
For the Northern District of California

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiffs:**

| | |
|---|---|
| Anthony R. de Alcaeus | adealcuaz@mwe.com |
| Terrence Patrick McMahon | tmcmahon@mwe.com |
| Jeremy Todd Elman | jelman@mwe.com |
| Robert J. Blanch , Jr. | rblanch@mwe.com |
| Phillip C. Ducker | pducker@mwe.com |

**Counsel for Defendants:**

| | |
|---|---|
| Jeffrey Stewart Love | jeffrey.love@klarquist.com |
| Daniel Justin Weinberg | dweinberg@orrick.com |
| Gabriel M. Ramsey | gramsey@orrick.com |
| Garth Alan Winn | garth.winn@klarquist.com |
| Kristin L. Cleveland | kristin.cleveland@klarquist.com |
| Laura Kieran Kieckhefer | kkieckhefer@orrick.com |
| Michael J. Bettinger | mike.bettinger@klgates.com |
| Patrick Marshall Bible | patrick.bible@klarquist.com |
| Robert T. Cruzen | rob.cruzen@klarquist.com |
| Stephanie Sue Nelson | stephanie.nelson@klarquist.com |
| Eric Lance Wesenberg | ewesenberg@orrick.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   5/13/10                                             CCL
                                                      **Chambers of Judge Whyte**