**E-FILED on**   8/3/10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ARISTOCRAT TECHNOLOGIES, AUSTRALIA PTY LIMITED and ARISTOCRAT TECHNOLOGIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> INTERNATIONAL GAME TECHNOLOGY and IGT, <br><br> Defendants. | No. C-06-03717 RMW <br><br> ORDER REGARDING WAIVER OF ATTORNEY-CLIENT PRIVILEGE <br><br> **[Re Docket No. 796]** |

Defendants International Game Technology and IGT (collectively "IGT") object to the magistrate judge's failure to determine the scope of the attorney-client privilege waiver made by plaintiffs Aristocrat Technologies, Australia Pty Limited, and Aristocrat Technologies, Inc. (collectively "Aristocrat"). Having considered the arguments of both parties, the court determines the scope of the privilege waiver as set forth below.

## I. BACKGROUND

Aristocrat and IGT are competitors in the market for electronic gaming machines. Aristocrat filed suit against IGT, alleging infringement of United States Patent Nos. 7,056,215 ("'215 Patent") and 7,108,603 ("'603 Patent"). The patent application that eventually issued as the '215 Patent was

1  U.S. Patent Application No. 09/462,717 ("'717 Application").  The '603 Patent is a continuation of
2  the '215 Patent and thus claims priority from the '717 Application.

3        IGT has asserted various defenses and counterclaims, including patent unenforceability due
4  to inequitable conduct.  IGT alleges that Aristocrat committed inequitable conduct in the prosecution
5  of the '717 Application, rendering both the '215 Patent and the '603 Patent unenforceable.  In
6  particular, IGT alleges that Mr. Shahan Islam, Aristocrat's patent attorney prosecuting the '717
7  Application, falsely represented to the Patent and Trademark Office ("PTO") that the entire delay in
8  seeking revival of the '717 Application (which had been abandoned) was unintentional.  According
9  to IGT, Aristocrat committed inequitable conduct because it learned of the material
10 misrepresentation by July 2003, failed to inform the PTO of this material false statement, and
11 instead accepted the benefit of Islam's prosecution conduct.

12       IGT sought information relating to its inequitable conduct claim in its Rule 30(b)(6)
13 deposition of Aristocrat.  During the course of the deposition, disputes arose over Aristocrat's
14 assertion of the attorney-client privilege, resulting in IGT filing a motion to compel and for
15 sanctions and Aristocrat filing a motion for a protective order.  On August 19, 2009 (before these
16 motions were heard by the magistrate judge), Aristocrat provided IGT with attorney-client
17 privileged communications between December 1999 and July 15, 2003.  The parties now dispute the
18 scope of this waiver of attorney-client privilege.

19 ## II.  ANALYSIS

20       It is well-established that "voluntary disclosure of the content of a privileged attorney
21 communication constitutes a waiver of the privilege as to all other such communications on the same
22 subject."  *Weil v. Investment/Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981).
23 What the court must determine is the metes and bounds of the subject matter that was disclosed.  In
24 this case, the parties dispute both the temporal scope and the substantive scope of the privilege
25 waiver.

26     **A.**    **Temporal Scope of Waiver**

27       According to Aristocrat, the temporal scope of the waiver should be limited to the time
28 period for which it had already produced communications – from December 1999 (shortly before the

ORDER REGARDING WAIVER OF ATTORNEY-CLIENT PRIVILEGE   —No. C-06-03717 RMW
CCL                                                                                                2

filing of the '717 Application) through July 15, 2003 (shortly after Aristocrat first discovered the abandonment of the '717 Application).  IGT argues that the temporal scope of the waiver should include the entire period that the '215 and '603 Patents were pending, meaning the time period should stretch from December 1999 until June 6, 2006 for the '215 Patent and from December 1999[1] until September 19, 2006 for the '603 Patent.

As the party asserting attorney-client privilege, Aristocrat has the burden of proving that it has not waived the privilege for communications after July 15, 2003.  *See Weil*, 647 F.2d at 25.  Aristocrat has not met this burden.  While it is clear that Aristocrat sought to limit the privilege waiver to a specific time period (as evidenced by its limited production of attorney communications), its subjective intent is not dispositive.  *See Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 577 (N.D. Cal. 2008) ("Phoenix's attorney argument that it did not subjectively intend to waive the privilege as to any documents beyond those which have already been disclosed is unpersuasive to make out the necessary element of nonwaiver.").

It appears that Aristocrat seeks to use the waived attorney communications to prove that it was not aware of its patent attorney's alleged misconduct before the PTO at the time the misconduct occurred.  However, IGT has alleged inequitable conduct based on Aristocrat later learning of this misconduct, failing to report it to the PTO, and accepting the benefits of the misconduct.  Thus, Aristocrat's knowledge is at issue, not only at the time the alleged misrepresentation was made to the PTO, but throughout the entire pendency of the patents in suit.  Aristocrat has not provided a persuasive reason to limit the scope of the waiver with an arbitrary cutoff date of July 15, 2003.

> The doctrine of waiver of the attorney-client privilege is rooted in notions of fundamental fairness.  Its principal purpose is to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable.

*Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340-41 (9th Cir. 1996).  In light of the fact that Aristocrat's knowledge throughout the pendency of the patents in suit is at issue, it would be unfair to allow Aristocrat to selectively waive privilege to establish its lack of knowledge regarding the

---

[1] The application that eventually issued as the '603 Patent was not filed until April 8, 2005, but this application was a continuation of the '717 Application and thus claims the earlier priority date of July 8, 1998.

alleged misconduct during a particular time frame while refusing to disclose attorney communications regarding its later acquisition of knowledge of the same misconduct.  The court therefore adopts the temporal scope proposed by IGT: from December 1999 until June 6, 2006 for the '215 Patent and from December 1999 until September 19, 2006 for the '603 Patent.

### B. Substantive Scope of Waiver

IGT contends that the substantive scope of the privilege waiver should include: (1) Aristocrat's actions, knowledge, or intent with respect to abandonment, delay, timing, or revival of the '717 Application; (2) the decision to disclose or not disclose conduct occurring during the period of abandonment to the PTO; and (3) any policy of abandonment of patent applications generally. Aristocrat seeks to limit the scope of the waiver to the following subject matter: (1) the abandonment of the '717 Application, (2) Aristocrat's knowledge of the abandonment of the '717 Application, and (3) any intent by Aristocrat or its attorneys during that period to delay or abandon the '717 Application.

The substantive scope of the waiver is determined by the content of the disclosed communications. *See Weil*, 647 F.2d at 24.  It appears that the privileged communications which were produced demonstrate that prior to July 2003, Aristocrat was not aware of the abandonment of the '717 Application, the delay in filing a petition to revive the '717 Application, and Islam's representation to the PTO that the entire delay was unintentional.  Thus, the disclosed communications relate directly to the abandonment, delay, timing, and revival of the '717 Application and Aristocrat's knowledge and intent with respect to said abandonment, delay, timing, and revival.  Consequently, the scope of the waiver undoubtedly encompasses Aristocrat's knowledge and intent regarding the abandonment, delay, timing, or revival of the '717 Application. For the reasons discussed above, this includes knowledge that Aristocrat acquired post-July 2003 regarding the abandonment, delay, timing, or revival of the '717 Application.  Aristocrat's decision-making process (regarding disclosure or non-disclosure to the PTO) and any general policy of abandonment, however, do not bear any direct relation to the subject matter of the disclosed communications. The court therefore finds that the substantive scope of the privilege waiver is: (1) the abandonment, delay, timing, or revival of the '717 Application; (2) any knowledge by Aristocrat

or its attorneys regarding the abandonment, delay, timing, or revival of the '717 Application; and (3) any intent by Aristocrat or its attorneys to delay or abandon the '717 Application.

Further, any communications with trial counsel in anticipation of bringing an infringement claim once the patents issued would not appear to be within the scope of the waiver, provided trial counsel was not in any way involved with the prosecution of the patents. Trial counsel's involvement presumably was not related to the alleged inequitable conduct that involved withholding of information from the PTO. *Cf. In re Seagate Tech., LLC*, 497 F.3d 1360, 1374-75 (Fed. Cir. 2007) (holding that "as a general proposition, . . . asserting the advice of counsel defense and disclaiming the opinions of opinion counsel do not constitute waiver of the attorney-client privilege for communications with trial counsel").

### III. ORDER

For the foregoing reasons, the court finds that the scope of Aristocrat's attorney-client privilege waiver is as follows:

1. The temporal scope of the waiver is: (1) from December 1999 until June 6, 2006 for the '215 Patent and (2) from December 1999 until September 19, 2006 for the '603 Patent.

2. The substantive scope of the waiver is: (1) the abandonment, delay, timing, or revival of the '717 Application; (2) any knowledge by Aristocrat or its attorneys regarding the abandonment, delay, timing, or revival of the '717 Application; and (3) any intent by Aristocrat or its attorneys to delay or abandon the '717 Application.

DATED: 8/3/10

RONALD M. WHYTE
United States District Judge